# EXHIBIT "H"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| G.F. KELLY TRUCKING, INC.; and GUY KELLEY, individually, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )  CIVIL ACTION NO: ) 3:06-CV-351-MEF |
| U.S. XPRESS ENTERPRISES, INC., | ) ) |
| Defendant. | ) |

## DECLARATION OF ALAN J. HINGST

1.  My name is Alan J. Hingst. The statements contained herein are based on my personal knowledge, and I am competent to testify about all matters on which I am offering evidence herein.

2.  I am the Executive Vice President Contractor Program for U.S. Xpress, Inc. ("USX"). I held this same position in 2005.

3.  I offer this declaration in supplement to my deposition on February 6, 2007. I was involved in the due diligence investigation of Guy Kelly Trucking, Inc. ("GFK"). I personally visited GKF during the due diligence process.

4.  GFK had represented that it had 200 drivers. Its records and list of drivers was vague at best. Some drivers did not have files, while others had incomplete files. The list of GFK drivers grew from 116 the later part of July to 168 by August 12, 2005. USX was under the impression that there were still additional GFK drivers or drivers of affiliated GFK companies that had not appeared on a list and for whom there was no driver file that would materialize during the driver qualification process.

5.  During my visit to GFK, I advised GFK and the USX personnel present that the GFK drivers would be routed to their homes each weekend. There was some confusion about this, which I cleared it up while I was there. Despite this, I heard GFK drivers complain that they would not be willing to comply with USX's policies and procedures. Several stated that they had no intention of stopping at scales, or logging scale and fuel stops. I also heard GFK drivers' state that they were not going to drive a governed tractor in reference to the fact that USX governs its trucks at 67 mph. It was apparent that the GFK drivers were comfortable with a more permissive safety working environment than that of USX. It was also readily apparent that there was a general over-riding sense of objection against and hostility toward driving for USX.

I advised the USX decisions makers of my observations of the driver issues, as well as other matters pertaining to the due diligence investigation, and USX determined that either by record or bad attitude, USX would be unable to qualify enough drivers that were acceptable to it.

I declare under penalty of perjury that the forgoing is true and correct.

_2/22/07_
Date

_Alan J. Hingst_ (signature)
Alan J. Hingst
Executive Vice President Contractor Program
U.S. Xpress, Inc.

2