IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| G.F. KELLY TRUCKING, INC.; and<br>GUY KELLEY, individually,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. XPRESS ENTERPRISES, INC.,<br><br>    Defendant. | CIVIL ACTION NO:<br>3:06-CV-351-MEF |

## BRIEF IN SUPPORT OF SUMMARY JUDGMENT

COMES NOW Defendant U.S. Xpress Enterprises, Inc. ("USX") and submits the following brief in support of its Motion for Summary Judgment filed contemporaneously herewith.

### Argument

Plaintiffs and USX engaged in arm's length commercial negotiations. Kelly is an experienced businessman, and he is experienced in negotiating towards the purchase of his company. Throughout the USX negotiations, Kelly was advised by two attorneys, his company's accountants and his business partner. Kelly negotiated changes to the Asset Purchase Agreement ("APA") before signing it, and by signing the APA, Kelly agreed to the terms and conditions of the APA.

In the Complaint, Plaintiffs contend that USX breached the APA by not closing on the purchase of GFK. But when faced with the conditions to closing provided in the APA -- which were not met -- Kelly testified that USX made oral representations by which USX guaranteed, without conditions, that it would purchase GFK. Apparently, these oral representations are the basis of Plaintiffs' fraud claims, too. The bottom line is, however, that the APA is controlling. Plaintiffs do not plead and, there is no evidence, that Plaintiffs were fraudulently induced or

coerced to enter into the APA. Even assuming for the sake of argument that oral representations were made, these representations did not take the place of the APA. Plaintiffs could not, as a matter of law, reasonably rely on the alleged oral representations when they are directly contradicted by the terms of the APA and by the very events taking place contemporaneously with the representations.

I.    **Plaintiffs' breach of contract claim fails as a matter of law because the undisputed evidence shows that the Asset Purchase Agreement was not breached.**

Plaintiffs contend that USX breached the Asset Purchase Agreement "by failing and refusing to properly pay the purchase price due thereunder." [Complaint at p. 3-4, para. 17-18]. However, Kelly admits that he intended to be bound by the APA and that it included certain enumerated conditions to closing. [Kelly Depo. at p. 185, line 21 to p. 186, line 23; Def. Exh. 40; p. 192, line 1 to p. 195, line 3; p. 227, line 19 to p. 230, line 6, Def. Exh. 45; p. 234, line 16 to p. 235, line 9; p. 256, line 16 to p. 257, line 22; p. 265, line 21 to p. 267, line 23]. The APA expressly provides that "[t]he obligations of Buyer hereunder are subject to the following conditions (all or any of which may be waived in whole or in part by Buyer) having been fulfilled on or before the Closing Date." [Kelly Depo. at p. 227, line 19 to p. 228, line 6, Def. Exh. 45, p. 5, Art. III]. The satisfaction of each of these conditions was determined at USX's "sole discretion." [Id.]. The undisputed evidence shows that these conditions were not met.

Of primary concern to USX was the lack of qualified drivers. According to the APA:

> Section 3.6. <u>Closing Date Drivers</u>. Buyer shall be satisfied, in its sole discretion, that there will be at least one hundred thirty (130) Closing Date Drivers that will meet Buyer's qualifications for hiring.

[Kelly Depo. at p. 227, line 19 to p. 228, line 6, Def. Exh. 45, p. 6, Art. III, Sec. 3.6]. At the time of the USX negotiations, GFK had approximately 167 drivers. [Childers Depo. at p. 46, line 1 to p. 47, line 4, Def. Exh. 65; p. 50, lines 7-11; p. 52, line 13 to p. 54, line 14; Moore Decl. at ¶ 4].

2

However, during the application and qualification process, USX found that twenty-nine of these drivers did not meet USX's qualifications. [Childers Depo. at p. 111, line 1 to p. 122, line 14, Def. Exhs. 33 and 88; Hingst Depo. at p. 32, line 4 to p. 33, line 24; Moore Decl. at ¶ 9]. Additionally, Kelly testified that approximately fifty drivers quit during the application and qualification process. [Kelly Depo. at p. 72, line 14 to p. 73, line 12; p. 230, line 16 to p. 231, line 6, Def. Exh. 46; p. 233, line 14 to p. 234, line 15]. These drivers who quit, and several of the drivers who were still going through the application and qualification process, displayed reluctance, if not outright hostility, to conform to USX's driver standards. [Kelly Depo. at p. 74, line 2 to p. 75, line 14; p. 156, line 5 to p. 157, line 9; Hingst Depo. at p. 28, line 9 to p. 29, line 12; p. 39, lines 3-13; Hingst Decl. at ¶ 5]. Consequently, USX was not satisfied that there would be at least 130 drivers who met its qualifications for hiring. [Farnsworth Depo. at p. 96, lines 10-18; Hingst Depo. at p. 41, lines 5-13; Hingst Decl. at ¶5; Moore Decl. at ¶ 9].

Additionally, USX was not satisfied with its inspection of GFK's equipment. As the APA provides:

> Section 3.2. <u>Inspections</u>. Buyer shall have completed its inspection of the Transferred Equipment and Leased Equipment and shall be satisfied with the results of such inspection in its sole discretion.

[Kelly Depo. at p. 227, line 19 to p. 228, line 6, Def. Exh. 45, p. 6, Art. III, Sec. 3.2]. During USX's physical inspection of the tractors and trailers that were to be purchased, it discovered that the equipment was in "serious disarray." [Farnsworth Depo. at p. 100, lines 12-18]. USX found about fifty to sixty trailers at GFK's Wadley location that had "substantial damage" and would not meet USX's road specifications. [Hingst Depo. at p. 26, line 15 to p. 28, line 2].

Further, by the week of August 22, GFK still had not provided its Lien Payoff Letters or Factoring Payoff Letter. [Farnsworth Depo. at p. 85, line 5 to p. 88, line 1].

3

> Section 3.7. <u>Lien Payoff Letters</u>. If any Transferred Equipment is subject to a Lien, prior to Closing, Seller shall present to Buyer one or more payoff letters, with all prepayment penalties, late fees, administrative fees, and other amounts due included (the "<u>Lien Payoff Letters</u>"). The Lien Payoff Letters shall be executed by the lenders providing financing on each of the Transferred Equipment. Prior to Closing, Seller shall have made payment on the obligations secured by Liens on the Transferred Equipment in order to make the total amount of such obligations less than or equal to the total Equipment OLV for Transferred Equipment not excluded from the transaction pursuant to Section Section [sic] 1.5, and the amount and manner of payment of such obligations shall be satisfactory to Buyer in Buyer's sole discretion. As of Closing, the amount of all prepayment penalties, late fees, administrative fees, and other amounts indicated as due in the Lien Payoff Letters shall not, on an aggregate basis, exceed the total Equipment OLV for Transferred Equipment not excluded from the transaction pursuant to Section section [sic] 1.5.
>
> Section 3.8. <u>Factoring Payoff Letter</u>. Seller shall present to Buyer a payoff letter, with all prepayment penalties, late fees, administrative fees, and other amounts due under the Factoring Agreement included (the "<u>Factoring Payoff Letter</u>" and, together with the Lien Payoff Letters, the "<u>Payoff Letters</u>"). The Factoring Payoff Letter shall be executed by Interstate Capital Corp., and the amount of all prepayment penalties, late fees, administrative fees, and other amounts indicated as due in the Factoring Payoff Letter shall not exceed ninety percent (90%) of all Accounts Receivable included in the Purchased Assets as of the Closing Date.

[Kelly Depo. at p. 227, line 19 to p. 228, line 6, Def. Exh. 45, p. 7, Art. III, Sec. 3.7 and 3.8]. Moreover, based on the documentation USX was able to obtain, the amount due to GFK's creditors for its tractors exceeded the tractors' Ordinary Liquidation Value ("OLV"). [Farnsworth Depo. at p. 100, line 19 to p. 102, line 16]. Consequently, the conditions to closing of section 3.7 and 3.8 were not met.

Each of these conditions to closing was a condition precedent to USX's obligation to purchase GFK's assets. In other words, because the conditions were not met, USX had no obligation to close. "A contractual duty subject to a condition precedent is not required to be performed until the condition occurs or its nonoccurrence is excused." *Holland v. Holland*, 2001 WL 585107, *3 (Tenn Ct. App. June 1, 2001) (citing *Covington v. Robinson*, 723 S.W. 2d 643,

4

645 (Tenn. Ct. App. 1986); *Strickland v. City of Lawrenceburg*, 611 S.W. 2d 832, 837 (Tenn. Ct. App. 1980); Restatement (Second) of Contracts § 225(1) (1981)).[1]

Despite his admission that the APA places conditions on USX's obligation to purchase GFK, Kelly maintains that Farnsworth orally guaranteed the purchase regardless of any conditions. However, the APA includes the parties' agreement that the APA:

> shall not be changed or terminated orally and no waiver of compliance with any provision or condition hereof and no consent provided for herein shall be effective unless evidenced by a written instrument duly executed by the party to be charged therewith.

[Kelly Depo. at p. 227, line 19 to p. 228, line 6, Def. Exh. 45, p. 19, Sec. 11.6]. Moreover, the APA includes a merger clause providing that it is "the entire agreement between the parties hereto with respect to the transactions contemplated herein." [Id. at Sec. 11.3]. "The law is well settled that all evidence of verbal negotiations and stipulations anterior to or contemporaneous with the execution of a written instrument which contradict, alter or vary the terms of the written instrument is barred by the parol evidence rule... ." *Schaeffer v. American Honda Motor Co., Inc*, 976 F. Supp 736 (W.D. Tenn. 1997) (quoting *Marron v. Scarbrough*, 44 Tenn. App. 414,

---

[1] The APA provides that Tennessee law applies to its construction and enforcement. [Kelly Depo. at p. 227, line 19 to p. 228, line 6, Def. Exh. 45, p. 19, Sec. 11.8]. "In a contractual dispute, Alabama law would have us first look to the contract to determine whether the parties have specified a particular sovereign's law to govern." *Ex parte HealthSouth Corp.*, 2007 Ala. LEXIS 28 (Ala. February 16, 2007) (quoting *Stovall v. Universal Const. Co., Inc.*, 893 So. 2d 1090, 1102 (Ala. 2004)); see also *Polaris Sales, Inc. v. Heritage Imports, Inc.*, 879 So. 2d 1129, 1133 (Ala. 2003) ("Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement." (quoting *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991)).

Even if Alabama law applied, the result would be the same. See *Eady v. Bill Heard Chevrolet Co.*, 274 F. Supp. 2d 1284, 1286 (M.D. Ala. 2003) ("Under Alabama law, 'a party can question the whole existence of a contract by alleging the failure of a conditions precedent.'"); *Gamble v. Corley, Moncus & Ward, P.C.*, 723 So. 2d 627, 631 (Ala. 1998) ("A condition precedent is a fact (other than the lapse of time) that, unless excused, must exist or occur before a duty of immediate performance of a promise arises.").

314 S.W.2d 165, 181 (1958)). "Even if parol evidence does not contradict the terms of a completely integrated agreement, it is still inadmissible if it comes within the "scope" of the writing." *Id.* (citing *Restatement* § 213(2); *Strickland v. City of Lawrenceburg,* 611 S.W.2d 832, 838 (Tenn.Ct.App.1980)).

Kelly testified that he intended to be bound by the APA, and Plaintiffs do not allege that they were fraudulently induced to enter into the APA or that it is somehow ambiguous. [Kelly Depo. at p. 265, line 21 to p. 267, line 22]. Therefore, no alleged oral representations by Farnsworth are admissible to contradict the APA.[2] Under the APA, USX was not obligated to purchase GFK unless the conditions to closing were met. Because the conditions were not met, Plaintiffs' breach of contract claim fails as a matter of law.

## II.    Plaintiffs' fraud claims fail as a matter of law because Plaintiffs' could not reasonably rely on any alleged representations outside the APA.

Kelly testified that, through representations made by Dennis Farnsworth, USX guaranteed that it would purchase GFK and that he should not worry about any conditions to

---

[2]    Should Plaintiffs argue that Farnsworth's oral statements constitute a modification of the APA, Plaintiffs' arguments fail because there is no evidence that they supplied additional consideration for any such modification. "An alteration or amendment to an existing contract must be supported by consideration." *Dunlop Tire & Rubber Corp.v. Service Merchandise Co., Inc.*, 667 S.W.2d 754, 758 (Tenn. Ct. App. 1984) (citing *Boyd v. McCarty*, 142 Tenn. 670, 222 S.W. 528 (1919)); *see also Hill v. Goodwin*, 722 S.W.2d 668, 671 (Tenn. Ct. App. 1986) (Tennessee law requires "that a modification of an existing contract must be supported by consideration."). "Performing what was already promised in the original contract is not consideration to support a second contract." *Id.* at 758-759 (citing *American Fruit Growers, Inc. v. Hawkinson*, 21 Tenn. App. 127, 106 S.W. 2d 564 (1937)). "The modification of an existing agreement which imposes new obligations on one of the parties is unenforceable for lack of consideration unless it also imposes a new obligation on the other party." *Id.* at 759 (citing A. Corbin, *Corbin on Contracts* § 212 (1963); *See also* 1 Tenn. Juris., Contracts § 63 (2004) ("Regarding consideration for the modification of a contract, an undertaking by one party to perform the whole or part of what he promised in an original contract will not support a promise by another party to perform what he had previously agreed and something more.").

6

closing because the safety department would work them out.[3] [Kelly Depo. at p. 135, line 6 to p. 136, line 22; p. 137, line 21 to p. 139, line 7; p. 145, line 7 to p. 148, line 8; p. 175, line 19 to p. 176, line 6; p. 202, lines 3-20; p. 234, line 16 to p. 235, line 2; p. 257, lines 3-15]. However, as shown above, the APA expressly and directly contradicts any such representations. USX's obligation to purchase GFK is subject to the satisfaction of several conditions to closing. [Kelly Depo. at p. 227, line 19 to p. 228, line 6, Def. Exh. 45, pp. 5-7, Art. III]. Perhaps realizing that they cannot recover on their breach of contract claim, Plaintiffs attempt to plead a cause of action for fraud based on the very same representations.

Plaintiffs' fraud claim is one for promissory fraud; they claim that USX promised it would close on the purchase of GFK.

> "The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. To prevail on a promissory fraud claim such as that at issue here, that is, one based upon a promise to act or not to act in the future, two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive."

*Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1160 (Ala. 2003) (quoting *Padgett v. Hughes*, 535 So. 2d 140, 142 (Ala. 1988)). Plaintiffs' fraud claim fails as a matter of law.

First, the undisputed evidence shows that Plaintiffs could not have reasonably relied on Farnsworth's alleged representations. Reasonable reliance is a necessary element to any fraud claim, whether based on an affirmative misrepresentation or suppression. *See Johnson v. Sorenson*, 914 So. 2d 830, 837 (Ala. 2005) ("'Although the term "inducement" has often been

---

[3] Just to be clear, USX does not admit that Farnsworth ever made the alleged oral representations that USX was going to purchase GFK regardless of the satisfaction of the conditions to closing. USX's argument is that, assuming for the sake of argument that the representations were made, Plaintiffs' claims fail as a matter of law.

7

used in the description of the fourth element of suppression, it is clear that a plaintiff's ["reasonable reliance"] is an essential element of a suppression claim.'"); *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1160 (Ala. 2003). "'If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover.'" *Waddell & Reed, Inc.*, 875 So. 2d at 1160 (quoting *Torres v. State Farm Fire & Cas. Co.*, 438 So. 2d 757, 759 (Ala. 1983)).

Kelly is an educated, experienced businessman. [Kelly Depo. at p. 14, lines 8-12; p. 16, line 18 to p. 20, line 23; p. 25, line 21 to p. 30, line 1; p. 34, line 6 to p. 36, line 23; p. 45, lines 8-17; p. 47, lines 21-23; p. 48, line 19 to p. 49, line 19; p. 51, lines 4-9; p. 52, lines 12-13; p. 53, line 3 to p. 54, line 1; p. 114, line 7 to p. 115, line 22; p. 159, lines 2-8]. He had seen negotiations for the purchase of GFK fail in the past. [Id. at p. 108, line 17 to p. 109, line 14]. Further, Kelly was well-aware of the conditions to closing in the APA, having read the APA and received the advice of his attorneys and accountants. [Kelly Depo. at p. 69, line 20 to p. 70, line 22; p. 101, line 8 to p. 102, line 3; Def. Exh. 13, pp. 1-2; p. 103, lines 11-17; p. 235, lines 3-9]. With his experience and knowledge in hand, Kelly could not have reasonably relied on oral representations that are directly contradicted by USX's actions during the negotiations and by the APA itself. As discussed above, simultaneous with the alleged representations, USX was continuing its due diligence investigation into the conditions of closing. [Kelly Depo. at p. 143, line 19 to p. 145, line 18; Farnsworth Depo. at p. 61, line 4 to p. 63, line 9; p. 70, lines 4-24; p. 76, lines 7-20; p. 80, line 24 to p. 82, line 12; p. 85, line 5 to p. 89, line 7; p. 92, line 22 to p. 94, line 14; p. 96, line 10 to p. 97, line 12; p. 100, line 12 to p. 104, line 2]. Even Farnsworth's alleged representations to Kelly presume that USX's safety department is going to "work out" the conditions to closing. [Kelly Depo. at p. 175, line 19 to p. 176, line 6; p. 202, lines 3-20; p. 234,

8

line 16 to p. 235, line 2; p. 257, lines 3-15]. USX's actions in this regard are directly contrary to any alleged representations that the nature and condition of GFK's drivers and equipment no longer mattered to USX. "If a party has reason to doubt the truth of an oral representation or is informed of the truth before he acts, he may not reasonably act or rely on that representation." *Tyler v. Equitable Life Assur. Soc. of U.S.*, 512 So. 2d 55, 57 (Ala. 1987). (affirming summary judgment for defendant on fraud claim because contract contradicted alleged oral representations).

Moreover, and perhaps most important, the alleged representations are clearly and directly contradicted by the Letter of Intent and the APA, both of which expressly provide that USX's obligation to purchase GFK is not binding until certain conditions are met. [Kelly Depo. at p. 170, line 13, through p. 171, line 5; Def. Exh. 37, p. 1, 1st para. and p. 5, para. 11; p. 227, line 19 to p. 228, line 6, Def. Exh. 45, pp. 5-7, Art. III]. With the benefit of his attorneys' advice, Kelly negotiated the terms of the APA, even rejecting terms originally proposed by USX and insisting upon changes. [Kelly Depo. at p. 187, lines 15-22; p. 213, lines 7-23, Def. Exh. 42; p. 220, line 5 to p. 223, line 19; Farnsworth Depo. at p. 124, line 21 to p. 126, line 20]. The APA expressly provides in Article III that USX may determine at its "sole discretion" whether the enumerated conditions to closing are met. [Kelly Depo. at p. 227, line 19 to p. 228, line 6, Def. Exh. 45, pp. 5-7, Art. III]. The APA further provides that closing is "Subject to Article III." [Kelly Depo. at p. 227, line 19 to p. 228, line 6, Def. Exh. 45, p. 7, Sec. 4.1]. Kelly testified that he agreed to be bound by the APA. [Kelly Depo. at p. 265, line 21 to p. 266, line 9]. Under Alabama law, "fraud or misrepresentation cannot be predicated upon a verbal statement made before execution of a written contract when a provision in that contract contradicts the verbal

B ERF 738704 v1
2016317-000055 2/23/2007

statement." *Birmingham News Co. v. Horn*, 901 So. 2d 27, 61 (Ala. 2004) (quoting *Tyler v. Equitable Life Assur. Soc. of the U. S.*, 512 So. 2d 55, 57 (Ala. 1987)).

A reasonably prudent, experienced businessman such as Kelly, who negotiated the terms of the APA, would know that the APA means what it says and that USX was not obligated to close if it found that the conditions to closing could not be met. Considering the activity ongoing through the date of USX's termination of the negotiations, and considering the terms of the Letter of Intent and the APA, Plaintiffs had every reason to doubt, and no reason to rely on, any alleged oral representations that USX had ever committed itself to purchasing GFK's assets regardless of the condition of those assets. *See Holton v. Blue Cross and Blue Shield of South Carolina*, 56 F. Supp. 2d 1338, 1345 (M.D. Ala. 1999) (granting summary judgment to defendant on fraud claim because, among other reasons, oral representations contradicted by written document); *Tyler v. Equitable Life Assur. Soc. of the U.S.*, 512 So. 2d 55, 57 (Ala. 1987) (affirming summary judgment for defendant on fraud claim because contract contradicted alleged oral representations); *Taylor v. Moorman Mfg. Co.*, 475 So. 2d 1187, 1189 (Ala. 1985) (affirming directed verdict in favor of defendants because contract contradicted alleged oral representations). *See also Mayberry v. American Intern. Group, Inc.*, 2006 WL 317239 (M.D. Ala. Feb. 9, 2006); *Kilpatrick v. Citibanc of Alabama/Andalusia*, 494 So. 2d 39 (Ala. 1986); *Torres v. State Farm Fire & Casualty Co.*, 438 So. 2d 757 (Ala. 1983).

Even if the absence of Plaintiffs' reasonable reliance were not enough, Plaintiffs have presented no evidence that USX intended to deceive them. Specifically, there is no evidence that USX did not intend to close on the purchase of GFK, assuming the conditions to closing were met. The evidence shows that, at all relevant times, USX was proceeding, step by step, towards closing. Farnsworth obtained and reviewed GFK's books and records and made a

10

recommendation to USX to proceed towards a purchase of GFK. [Farnsworth Depo. at p. 48, line 17 to p. 50, line 5; Kelly Depo. at p. 165, lines 3-20 and Def. Exh. 34]. USX obtained GFK's driver files and sent employees to Wadley to meet with GFK's drivers and complete the application and qualification process. [Farnsworth Depo. at p. 61, line 4 to p. 63, line 9; p. 70, lines 4-24; p. 80, line 24 to p. 82, line 12; p. 85, line 5 to p. 89, line 7; Moore Decl. at ¶¶4-6; Hingst Decl. at ¶¶ 4-5]. USX sent employees to Wadley and other locations where GFK kept its equipment to inspect GFK's tractors and trailers. [Farnsworth Depo. at p. 85, line 5 to p. 89, line 7; p. 92, line 22 to p. 94, line 14]. Farnsworth worked with Kelly and Chastain to obtain payoff letters for the equipment liens and to obtain a payoff letter for GFK's Factoring Agreement. [Farnsworth Depo. at p. 81, lines 3-9; p. 85, line 5 to p. 88, line 1; p. 93, line 22 to p. 94, line 14; p. 124, lines 11-20, Def. Exh. 48]. USX hired an appraisal company to provide the ordinary liquidation value of GFK's tractors and trailers. [Farnsworth Depo. at p. 100, line 19 to p. 101, line 10]. USX's activity continued until August 25, the day it determined that the conditions to closing could not be met, and USX communicated its determination to Kelly on that very same date. [Farnsworth Depo. at p. 94, line 15 to p. 95, line 3; p. 104, line 3 to p. 106, line 9; Kelly Depo. at p. 260, lines 6-14 and Def. Exh. 55]. USX's actions belie any alleged intent not to close on the purchase of GFK.

For these reasons, Plaintiffs' fraud claims fail as a matter of law.

III.  **Plaintiffs' fraudulent suppression claim fails as a matter of law because there is no evidence that USX intended not to close on the APA assuming its conditions were met.**

Plaintiffs allege that USX "failed to disclose to Kelly that the negotiation process, Agreement and closing period was nothing more than a fraudulent tactic employed by USX to freeze GFK's operations under the guise of consummating a buyout. In reality, USX sought to

11


suspend GFK's operations for a long enough period of time that its business function was paralyzed and, thus, recovery was impossible." [Complaint at p. 5, para. 26]. To support a fraudulent suppression claim, Plaintiffs must show:

> "(1) the suppression of a material fact (2) that the defendant has a duty to communicate (3) because of a confidential relationship between the parties or because of the circumstances of the case and (4) injury resulting as a proximate consequence of the suppression."

*Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 787 (11th Cir. 2005) (quoting *Ex parte Dial Kennels of Ala., Inc.*, 771 So. 2d 419, 421 (Ala.1999) (per curiam)).

Plaintiffs' fraudulent suppression claim fails because Plaintiffs have presented no evidence of the alleged material fact that USX "sought to suspend GFK's operations." [Complaint at p. 5, para. 26]. The Letter of Intent provides that GFK was to continue operating "in the normal course of business." [Kelly Depo. at p. 170, line 13, through p. 171, line 5; Def. Exh. 37, p. 4, para. 5]. Further, the APA provides:

> Section 7.1. <u>Conduct of Business</u>. Prior to the Effective Time [the time of closing], Seller [GFK] shall operate the Business only in the ordinary course of business consistent with past practice and will not introduce any new method of management, operation or accounting. Seller shall use commercially reasonable efforts to preserve the business intact, to retain Seller's present employees, customers, and suppliers so that they will be available to Buyer after the Closing, and to cause consummation of the transactions contemplated by this Agreement in accordance with its terms and conditions. Seller shall maintain all books and Records of Seller relating to the Business in the ordinary course of business. Seller shall continue in full force and effect the insurance coverage under policies existing as of the date hereof or substantially equivalent policies. Seller shall not knowingly take any action that might impair the Business or Purchased Assets without the prior written consent of Buyer or take or fail to take any action that would cause or permit the representations or warranties made in Article VIII hereto to be inaccurate at the time of the Closing. Seller shall maintain the Purchased Assets in a state of repair and condition that complies with legal requirements and is consistent with the requirements and normal conduct of Seller's business. Seller shall comply in all material respects with all applicable laws, rules, regulations, ordinances, and contractual requirements that are applicable to the Business.

B ERF 738704 v1
2016317-000055 2/23/2007

[Kelly Depo. at p. 227, line 19 to p. 228, line 6, Def. Exh. 45, p. 7, Sec. 4.1 and p. 10, Sec. 7.1]. Though Kelly "chose to back off on" paying his creditors, he admits that USX never encouraged him to do so. [Kelly Depo. at p. 137, lines 5-18; p. 138, line 22 to p. 139, line 7].

The undisputed evidence further shows that USX pursued closing, sending several employees to Wadley and other GFK locations to review GFK's books and records, evaluate its assets and interview GFK's drivers. [Kelly Depo. at p. 143, line 19 to p. 145, line 18; Farnsworth Depo. at p. 61, line 4 to p. 63, line 9; p. 70, lines 4-24; p. 76, lines 7-20; p. 80, line 24 to p. 82, line 12; p. 85, line 5 to p. 89, line 7; p. 92, line 22 to p. 94, line 14; p. 96, line 10 to p. 97, line 12; p. 100, line 12 to p. 104, line 2]. Kelly testified that he was in contact with USX every week during the negotiations. [Kelly Depo. at p. 143, lines 19-22]. In fact, if Kelly's testimony as to Farnsworth's alleged representations are true, then USX continued to push for closing despite Kelly giving USX an opportunity to pull out of the negotiations. [Kelly Depo. at p. 145, line 19 to p. 147, line 14; p. 182, line 17 to p. 183, line 12].

In short, there is no evidence that USX intended to freeze GFK's operations or to otherwise put him out of business. Plaintiffs' claim that USX defrauded him into freezing his business operations must fail as a matter of law.

### Conclusion

For the foregoing reasons, USX is entitled to summary judgment on each count of the Complaint.

Respectfully submitted this 23rd day of February, 2007.

/s/ Elizabeth R. Floyd
Lawrence B. Clark
David B. Hall
Elizabeth R. Floyd
Attorneys for Defendant
U.S. Xpress Enterprises, Inc.

13

<u>Of Counsel:</u>
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C.
420 20th Street North, Suite 1600
Birmingham, Alabama 35203
(205) 328-0480

### Certificate of Service

      I hereby certify that I have filed this document through the Court's CM/ECF electronic filing system and that the following persons will be served with notice of the filing on this the 23rd day of February, 2007.

<div align="center">

Jere L. Beasley
W. Daniel Miles
Clinton C. Carter
John Everett Tomlinson
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
P. O. Box 4160
Montgomery, Alabama 36103-4160

</div>

      /s/ Elizabeth R. Floyd
      Of Counsel

B ERF 738704 v1
2016317-000055 2/23/2007