# EXHIBIT 4

June 29, 2005

**PRIVILEGED & CONFIDENTIAL**

Mr. Guy F. Kelly
G. F. Kelly Trucking, Inc.
242 Main Street
P.O. Box 29
Wadley, AL 36276

Re:  Acquisition of Assets of G. F. Kelly Trucking, Inc.

Dear Guy:

    U. S. Xpress Enterprises, Inc., a Nevada corporation (together with its subsidiaries and affiliates, "USX"), has an interest in acquiring certain assets of G. F. Kelly Trucking, Inc., an Alabama corporation (together with its subsidiaries and affiliates, "GFK"). We wish to affirm our interest by setting forth the basic terms of a proposed transaction. Upon execution of this letter, USX would continue its due diligence investigation and, thereafter, USX and GFK would enter into negotiations for a definitive agreement. As set forth in Paragraph 11 below, this letter is not binding on any of the parties until completion of negotiations and execution of a definitive agreement.

    Based upon the information currently known to us, the definitive agreement would include the following terms:

1.     Basic Transaction.

    (a)     USX would purchase the business (the "Acquired Business") and certain tangible and intangible assets of GFK free and clear of all liens, claims, encumbrances, security interests, and impairments of title of any kind or nature (the "Purchased Assets"). Except as provided in the following sentence, the Purchased Assets would include substantially all of the assets and properties used in the Acquired Business, and would be substantially the same as the present assets and properties of GFK, except for any agreed upon changes established by the definitive agreement. The Purchased Assets would not include (i) any real property owned by GFK, (ii) cash, cash equivalents, and accounts receivable of GFK existing immediately prior to closing of the transaction, except to the extent GFK and USX otherwise agree, or (iii) any tractors, trailers, or other equipment excluded from the transaction by USX, in its sole discretion, after an appraisal and inspection of such equipment.

Kelly-000009

Mr. Guy F. Kelly
G. F. Kelly Trucking, Inc.
June 29, 2005
Page 2

      (b)    At closing of the definitive agreement ("Closing"), USX would (i) assume specified liabilities and obligations of GFK (the "Assumed Liabilities"), and (ii) deliver to GFK, in cash, an amount equal to the orderly liquidation value of all tractors and trailers included in the Purchased Assets, as determined prior to Closing through an appraisal by Taylor & Martin and an inspection by USX. The Assumed Liabilities would include only those liabilities identified or scheduled in the Agreement, would not include accounts payable, except to the extent GFK and USX otherwise agree, and would generally be limited to those liabilities related to the Acquired Business and Purchased Assets arising on or after the date of Closing.

      (c)    At Closing, USX and GFK would enter into one or more lease agreements (the "Leases") with respect to real property owned by GFK and used in the Acquired Business. Monthly amounts due to GFK under the Leases would be based upon the fair market value of the facilities leased and a capitalization rate of six percent (6.0%).

      (d)    Before and after Closing, GFK and its owner and president, Guy F. Kelly ("Kelly"), would cooperate with USX in negotiating the assignment or termination of equipment leases, as directed by USX.

      (e)    At Closing, USX would determine whether to offer employment to each of the drivers, including independent contractors, of GFK existing as of the Closing (the "Eligible GFK Drivers"). The decision as to whether to hire each Eligible GFK Driver would be made by USX in its sole discretion.

      (f)    At Closing, USX would determine whether to offer employment to each of the other non-driver employees of GFK existing as of the Closing. The decision as to whether to hire each non-driver employee would be made by USX in its sole discretion.

      (g)    At Closing, USX would enter into an independent contractor agreement with Kelly (the "Contractor Agreement"), pursuant to which Kelly would provide assistance to USX on such matters and at such times as USX reasonably requests on an independent contractor basis. Services to be provided by Kelly under the Contractor Agreement would include assistance in the hiring and retention of drivers, the transfer or termination of equipment leases, the conversion of customer accounts to USX, and other similar matters. Compensation would be paid under the Contractor Agreement for up to twenty-four (24) months after Closing based upon the following:

          (i)    *Driver Retention Payments.* In the first six (6) months after Closing, Kelly would be eligible to receive payments based on the hiring and retention of Eligible GFK Drivers by USX. Kelly would be paid $1,000 for each Eligible GFK Driver that is offered and accepts employment by USX (each, a "Retained Driver"). If a Retained Driver does not remain employed by USX for a period of at least one (1) month after

Mr. Guy F. Kelly
G. F. Kelly Trucking, Inc.
June 29, 2005
Page 3

hiring, USX would be entitled to deduct the full $1,000 paid with respect to such Retained Driver from future payments to Kelly under the Contractor Agreement. If a Retained Driver remains employed by USX for more than one (1) month but less than two (2) months, USX would be entitled to deduct $500 from future payments to Kelly under the Contractor Agreement. If a Retained Driver remains employed by USX for three (3) or more months, Kelly would be entitled to receive an additional $250 per month for each such Retained Driver, up to a maximum of four months and $1,000 per Retained Driver.

(ii)    *Driver Pool Payments*.  In the first twenty-four (24) months after Closing, Kelly would be eligible to receive payments based on the overall size of the driver pool serving the Acquired Business (the "Driver Pool"). The Driver Pool would include both Retained Drivers employed by USX and additional or replacement drivers recruited by Kelly (or his employees or agents) and hired by USX after Closing. After the end of each month, Kelly would be entitled to receive the following payments based on the weighted average size of the Driver Pool during the month then ended:

| Weighted Average Size of Driver Pool | Additional Payment to Kelly (per month) |
|---|---|
| 0 to 44 drivers | $0 |
| 45 to 89 drivers | $4,166.67 |
| 90 to 129 drivers | $8,333.33 |
| 130 to 169 drivers | $12,500.00 |
| 170 to 175 drivers | $16,666.67 |
| More than 175 drivers | $16,666.67 plus $150.00 per driver above 175 |

Settlement and payment of amounts due to Kelly under the Contractor Agreement, after giving effect to any applicable deductions, would occur on a monthly basis. The Contractor Agreement would provide that all decisions with respect to the hiring and retention of drivers following Closing would be made by USX in its sole discretion.

2.  Noncompetition Agreements. Each of GFK and Kelly would agree as part of the transaction to refrain from competition during the twenty-four (24) month period in which payments are to be made by USX under the Contractor Agreement and for an additional twelve (12) months thereafter. No additional compensation, other than compensation under the definitive agreement and the Contractor Agreement, would be paid by USX for these noncompetition agreements.

3.  Representations, Warranties, Covenants, and Conditions. GFK and Kelly would both agree to make representations, warranties, and covenants customary in these types of

Kelly-000011

Mr. Guy F. Kelly
G. F. Kelly Trucking, Inc.
June 29, 2005
Page 4

transactions. Closing of the definitive agreement would be subject to reasonable and customary conditions, including, but not limited to, absence of a materially adverse change in the Acquired Business or Purchased Assets, absence of material litigation relating to the transaction, the Acquired Business, or the Purchased Assets, accuracy of representations and warranties as if made at Closing, satisfaction with the results of our due diligence examination, approval by the USX board of directors, and absence of a materially adverse change in any applicable law, rule, or regulation, which applies to, and materially affects, GFK, the Acquired Business, or the Purchased Assets at or prior to Closing. The representations and warranties would survive Closing, and GFK and Kelly would jointly and severally indemnify USX against the full amount of any losses and costs it would suffer due to breach of any representation, warranty, or covenant.

4.  Access. From the date of this letter until Closing, unless negotiations are terminated, GFK would afford USX and its representatives full and free access to GFK, its personnel, accountants, lawyers, properties, contracts, books and records, and all other documents and data. The parties would work diligently towards the preparation and execution of the definitive agreement.

5.  Conduct of Business. From the date hereof through Closing, unless negotiations are terminated, GFK would operate the Acquired Business in the ordinary course of business and refrain from any extraordinary transactions. Among other things, you would not approve any wage increase, employment agreement, severance package, or similar measure related to the Acquired Business and would not dispose of any GFK assets except scheduled equipment trades of which we are informed.

6.  Confidentiality. Except to the extent required by law, USX will not disclose or use, and will direct its representatives not to disclose or use, any Confidential Information (as defined below) with respect to GFK that it receives from GFK except in connection with our evaluation of the transaction proposed in this letter. For purposes of this Paragraph 6, "Confidential Information" means any information about GFK received by us from you or your representatives in connection with the proposed transaction, unless (i) such information is already known to us or our representatives or to others not bound by a duty of confidentiality; (ii) such information becomes publicly available through no fault of ours or our representatives; (iii) the use of such information is necessary or appropriate in making any filing or obtaining any consent or approval required for the consummation of the transaction proposed in this letter; or (iv) the furnishing or use of such information is required by or necessary or appropriate in connection with legal proceedings. Upon written request, we will promptly return or destroy any Confidential Information in our possession and certify in writing that we have done so.

7.  Disclosure. Except to the extent required by law, NASDAQ or stock exchange rules, or upon written advice of securities counsel, without the prior consent of the other parties, no party will directly or indirectly, make any public comment, statement, or communication with

Mr. Guy F. Kelly
G. F. Kelly Trucking, Inc.
June 29, 2005
Page 5

respect to, or otherwise disclose or permit the disclosure of, the existence of discussions regarding the possible transaction or any of the terms, conditions, or other aspects of the transaction proposed in this letter. If a party is required to make any such disclosure, it must first provide to the other party the content of the proposed disclosure, the reasons such disclosure is required, and the time and place the disclosure will be made.

       8.    <u>Costs</u>.  USX will be responsible for all of its costs and expenses, and GFK and Kelly will be responsible for all of their own costs and expenses (including in each case any broker's, finder's, or investment banker's fees and the expenses of attorneys, accountants, and any other representatives) incurred in connection with pursuing or consummating the proposed transaction.

       9.    <u>Standstill</u>.  Except for the proposed transaction, from the date of this letter until July 15, 2005, neither GFK, Kelly, nor any representative of GFK or Kelly will solicit, respond to, consider, or engage in any discussions, negotiations, or contacts regarding a potential merger, acquisition, sale of assets, or other transaction involving all or any part of the assets, stock, or business of GFK, and such parties will cease any such discussions, contacts, or negotiations that have commenced prior to the date hereof.

      10.    <u>Termination</u>.  Any party hereto may terminate this letter upon written notice to the other parties if a definitive agreement is not signed on or before July 15, 2005. Upon such termination, this letter shall have no force or effect and no party shall have any further obligations hereunder; provided, however, that the binding provisions of this letter shall indefinitely survive the termination of this letter.

      11.    <u>Nature of Agreement</u>.  This letter sets forth some of the terms of a proposed transaction. Except for the provisions of Paragraphs 6, 7, 8, 9, 10 and 11 hereof, which are binding, this letter is not binding on the parties and may not be relied upon as the basis for a contract estoppel or be the basis for a claim based on detrimental reliance or any other theory. This letter is not intended as a substitute for the definitive agreement, which will contain all of the elements necessary for a transaction of this type. Other than the binding provisions hereof, a binding commitment with respect to the transaction would result only from the execution of the definitive agreement and any other necessary documentation, subject to the conditions expressed therein. This letter will be of no further force and effect unless it is signed on behalf of GFK and returned to USX by July 5, 2005.

*   *   *   *   *

Kelly-000013

Mr. Guy F. Kelly
G. F. Kelly Trucking, Inc.
June 29, 2005
Page 6

If you agree with this letter, please sign and return one copy and we will promptly begin work on our due diligence and a definitive agreement.

Very truly yours,

U. S. XPRESS ENTERPRISES, INC.,
a Nevada corporation

By: *[signature]*
Name: RAY M HARLIN
Title: Executive V.P & CFO

Duly executed on July ___, 2005

G. F. KELLY TRUCKING, INC.
an Alabama corporation

By: *[signature] 6-30-05*
Name: Guy F. Kelly
Title: President

Kelly-000014