# EXHIBIT 58

# Result Report

*Confidential*

08/24/2005

U.S. Xpress
4080 Jenkins Road
CHATTANOOGA, TN  37421
Location: USXpress

Attn:  DER

Re: ____ SSN:████████/Name:Gordon Denney
          Specimen ID #████████

The above referenced employee submitted a Drug Screen specimen for DOT,Pre-employment
substance abuse testing in accordance with applicable federal regulations, including 49 CFR part
40 and 382, on 08/22/2005.



G.F. Kelley v. U.S. Xpress
D 000583
Defendant's Doc. Production

Orientation Date: _Kelly_

## ACCOUNTABILITY CHECKLIST

First NM: _Gordon_ M.I.: _M_ Last NM: _Denney_ S.S.: ███████

ADDRESS: _2340 Co Rd 150_ City: _Lafayette_ State: _AL_ zip _36862_

BIRTH DATE: _9-27-36_ GAP DATES _____

*Must list actual conviction(s) & date(s) of conviction(s)

REASON FOR SEARCH: _____

RECRUITER: _____ DATE _____

███████████████████████████████████████████████

Requires two signatures to be completed: YES  OR  NO

SIGNATURE: _Kelly Jones_ DATE: _8-23-05_

CONDITIONAL OFFER TO BE MADE: YES OR NO

DISQUALIFIED FROM ORIENTATION: YES OR  NO

RECRUITING MANAGER SIGNATURE: _____ DATE _____

SAFETY MANAGER SIGNATURE: _____ DATE _____

G.F. Kelley v. U.S. Xpress
D 000840
Defendant's Doc. Production

G.F. Kelley v. U.S. Xpress
D 000790
Defendant's Doc. Production

G.F. Kelley v. U.S. Xpress
D 000670
Defendant's Doc. Production

FEDERAL DRUG TESTING CUSTODY AND CONTROL FORM



SPECIMEN ID NO. **106417721**

ADVANCED TOXICOLOGY NETWORK
3560 Air Center Cove, Memphis, TN 38118 (888)222-4894

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

| A. Employer Name, Address, I.D. No. 133606 | B. MRO Name, Address, Phone and Fax No. |
|---|---|
| US Xpress/Wadley<br>P.O. Box 489<br>Lowell, AR 72745<br>PH: 423-510-3540 FX: 423-510-3792 | Profile # 667436<br>BRMT-Robert Pflug, MD<br>8458 Hwy. 23, Ste. 4<br>Belle Chasse, LA 70037<br>PH: 504-394-6150  FX: 210-367-5200 |

STEP 5: COMPLETED BY DONOR

*I certify that I provided my urine specimen to the collector; that I have not adulterated it in any manner; each specimen bottle used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen bottle is correct.*

X *Gordon M Denney*        *Gordon M Denney*        *8/22/05*
Signature of Donor              (PRINT) Donor's Name (First, MI, Last)        Date [Mo./Day/Yr.]

Daytime Phone No. ( *334* ) *864-9161*    Evening Phone No. ( *334* ) *864-9161*    Date of Birth ___/___/___
                                                                                      Mo.  Day  Yr.

Should the results of the laboratory tests for the specimen identified by this form be confirmed positive, the Medical Review Officer will contact you to ask about prescriptions and over-the-counter medications you may have taken. Therefore, you may want to make a list of those medications for your own records. THIS LIST IS NOT NECESSARY. If you choose to make a list, do so either on a separate piece of paper or on the back of your copy (Copy 5).—DO NOT PROVIDE THIS INFORMATION ON THE BACK OF ANY OTHER COPY OF THE FORM. TAKE COPY 5 WITH YOU.

**STEP 6: COMPLETED BY MEDICAL REVIEW OFFICER - PRIMARY SPECIMEN**

*In accordance with applicable Federal requirements, my determination/verification is:*

☐ NEGATIVE    ☐ POSITIVE    ☐ TEST CANCELLED    ☐ REFUSAL TO TEST BECAUSE:
              ☐ DILUTE                          ☐ ADULTERATED    ☐ SUBSTITUTED

REMARKS _____

X _____    _____    ___/___/___
       Signature of Medical Review Officer       (PRINT) Medical Review Officer's Name (First, MI, Last)    Date [Mo./Day/Yr.]

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER - SPLIT SPECIMEN**

*In accordance with applicable Federal requirements, my determination/verification for the split specimen (if tested) is:*

☐ RECONFIRMED    ☐ FAILED TO RECONFIRM - REASON _____

X _____    _____    ___/___/___
       Signature of Medical Review Officer       (PRINT) Medical Review Officer's Name (First, MI, Last)    Date [Mo./Day/Yr.]

G.F. Kelley v. U.S. Xpress
D 000600
Defendant's Doc. Production

G.F. Kelley v. U.S. Xpress
D 000503
Defendant's Doc. Production

AUG-08-2005 MON 01:3E PM KELLY TRUCKING

812563952272                    P. 001/004

*Michelle ext. 378*
*fax 423 510-6138*

## U. S. XPRESS, INC.
4080 Jenkins Road • Chattanooga, TN 77421

## DRIVER APPLICATION

This application is current for thirty (30) days only. Thereafter, if you wish to be considered for employment, you must fill out a new application. All information must be completed. If a question does not apply, write NONE or "0". PLEASE PRINT.

APPLICANTS, DO NOT WRITE ABOVE THIS LINE.

### PERSONAL

NAME _Denney    Gordon    McKinley_     SOCIAL SECURITY # ███████████
   LAST  FIRST  MIDDLE

OTHER NAMES USED _None_

DATE OF BIRTH ████████  EMAIL ADDRESS _Denney G @ Bell South. Com_

ADDRESS _2340 Co Rd 150_     PHONE # ███████
   STREET    CITY

_Al_    _36862_   CELL PHONE # ███████
STATE  ZIP

NOTIFY IN CASE OF EMERGENCY _Sue Denney_   PHONE # ( ) _Same_
             AREA CODE

ADDRESS _Same_
  STREET   CITY   STATE  ZIP

REFERRED TO USX BY WHOM? _Kelly_

### RESIDENCE ADDRESS

LIST RESIDENCE ADDRESSES FOR THE PAST 3 YEARS.

(1) FROM _1981_ TO _Now_ _2340 Co. Rd. 150 Lafayette Al 36862_
       STREET    CITY   STATE  ZIP

(2) FROM _____ TO _____
       STREET    CITY   STATE  ZIP

(3) FROM _____ TO _____
       STREET    CITY   STATE  ZIP

### EDUCATION

TRUCK DRIVING SCHOOL

HAVE YOU ATTENDED TRUCK DRIVING SCHOOL?  ☐ YES  ☑ NO   GRADUATION DATE _____

NAME _____   LOCATION: _____

### MILITARY STATUS

HAVE YOU SERVED IN THE U.S. ARMED FORCES?  ☐ YES  ☑ NO

BRANCH _____ DATES: FROM _____ TO _____

ARE YOU CURRENTLY A MEMBER OF THE ACTIVE RESERVES OR NATIONAL GUARD?  ☐ YES  ☑ NO

LIST ANY SPECIAL SKILLS OR TRAINING THAT YOU RECEIVED _____

G.F. Kelley v. U.S. Xpress
D 000739
Defendant's Doc. Production

G.F. Kelley v. U.S. Xpress
D 000740
Defendant's Doc. Production

G.F. Kelley v. U.S. Xpress
D 000741
Defendant's Doc. Production

AUG-08-2005 MON 01:37 PM  KELLY TRUCKING

| | | | | | PCV | CMV |
| | | | | | POV | CMV |
| | | | | | PCV | CMV |
| | | | | | POV | CMV |

## AGREEMENT (PLEASE READ THE FOLLOWING STATEMENTS CAREFULLY)

I understand that U.S. Xpress Enterprises, Inc. and its subsidiaries follow the practice of requiring driver applicants to successfully complete a DOT physical, drug test, alcohol test or other tests, as a term and condition of qualification and from time to time thereafter to submit to a DOT physical, drug test, alcohol test, or other tests, upon request, as a term and condition of continued qualification. I hereby knowingly and freely give my consent to submit to DOT physicals, drug tests, alcohol tests, or other tests, and further agree to submit to DOT physicals, drug test, alcohol test, or other tests from time to time when so requested. I understand that my job offer is contingent upon obtaining DOT certification as well as successful completion of the orientation.

In connection with my application for qualification with you, I understand that an investigative consumer report(s) are being requested that will include information as to my character, credit history, work habits, performance, experience, accident history, drug and alcohol test results, including results from any pre-employment drug and/or alcohol test, along with reasons for termination of past employment obtained from previous employers. Further, I understand that you will be requesting information concerning my driving record and/or information from various state agencies the eighteen records concerning credit record, criminal history, traffic citations and accidents, as well as information concerning my previous driving record requests made by others from such state agencies. I understand that I have a right to make a written request within a reasonable amount of time to receive additional detailed information about the nature and scope of this investigation. I hereby authorize U.S. Xpress Enterprises, Inc. and its subsidiaries to obtain the above-described information, and agree that such information, and my experience history with you if I am qualified, will be supplied to other companies.

I further consent to you furnishing to consumer reporting services information concerning my character, work habits, performance, driving record and experience, as well as any reasons for termination of my qualifications, including drug and alcohol test results, and further consent to these services furnishing such information in the future to other companies which subscribe to these services from which I am seeking employment.

This certifies that the application was completed by me and that all entries on it are true and complete to the best of my knowledge. I also agree that falsified information and significant omissions may result in my disqualification now or at any time. I understand that U.S. Xpress Enterprises, Inc. and its subsidiaries use an electronic filing and signature system which includes the imaging and storing of employment applications. Therefore, my original paper application will not be retained. I understand that an electronic signature will be binding upon me to the same extent as if handwritten.

I understand that my qualification can be terminated, with or without cause, at any time at the discretion of either the company or myself.

In accordance with Section(s) 390.405, 382.413 & 391.23 of the Federal Motor Carrier Safety Regulations, I authorize any and all persons and/or institutions to provide any relevant information, including my alcohol and controlled substances testing/training and accident history that may be required to complete my qualification and I agree to release them from any and all liability for supplying said information.

_Gordon M Kenney_                                      _8-14-05_
Signature                                               Date

G.F. Kelley v. U.S. Xpress
D 000742
Defendant's Doc. Production



G.F. Kelley v. U.S. Xpress
D 002503
Defendant's Doc. Production



G.P. Kelley v. U.S. Xpress
D 002504
Defendant's Doc. Production



G.F. Kelley v. U.S. Xpress
D 002505
Defendant's Doc. Production

# Result Report

### *Confidential*

08/24/2005

U.S. Xpress
4080 Jenkins Road
CHATTANOOGA, TN  37421
Location: USXpress

Attn: ___DER_____

Re:     SSN: ████████ /Name: Gordon Denney
        Specimen ID # █████████ ·

The above referenced employee submitted a Drug Screen specimen for DOT, Pre-employment
substance abuse testing in accordance with applicable federal regulations, including 49 CFR part
40 and 382, on 08/22/2005.



G.F. Kelley v. U.S. Xpress
D 002506
Defendant's Doc. Production

G.F. Kelley v. U.S. Xpress
D 002507
Defendant's Doc. Production

Page 1 of 1



G.F. Kelley v. U.S. Xpress
D 002508
Defendant's Doc. Production

## DRIVER QUALIFICATION CHECK LIST

[ ]    APPLICATION

[ ]    REQUEST FOR DRIVING RECORD

[ ]    REQUEST FOR INFORMATION FROM PREVIOUS EMPLOYER

[ ]    DRIVERS' PHYSICAL EXAM AND CERTIFICATE

[ ]    ~~RECORD AND CERTIFICATE OF ROAD TEST~~

[ ]    RECORD OF VIOLATIONS / ANNUAL REVIEW CERTIFICATE

[ ]    CERTIFICATE OF COMPLIANCE

[ ]    DRIVER STATEMENT OF ON-DUTY HOURS NEW HIRE

G.F. Kelley v. U.S. Xpress
D 002509
Defendant's Doc. Production



G.F. Kelley v. U.S. Xpress
D 002510
Defendant's Doc. Production

G.F. Kelley v. U.S. Xpress
D 002511
Defendant's Doc. Production

G.F. Kelley v. U.S. Xpress
D 002512
Defendant's Doc. Production

G.F. Kelley v. U.S. Xpress
D 002513
Defendant's Doc. Production

**7. PHYSICAL EXAMINATION**    Height: 5' 11" (in.)    Weight: 201 (lbs.)

G.F. Kelley v. U.S. Xpress
D 002514
Defendant's Doc. Production



G.F. Kelley v. U.S. Xpress
D 002515
Defendant's Doc. Production



G.F. Kelley v. U.S. Xpress
D 002516
Defendant's Doc. Production

G.F. Kelley v. U.S. Xpress
D 002517
Defendant's Doc. Production

G.F. Kelley v. U.S. Xpress
D 002518
Defendant's Doc. Production

# 49 CFR 391.41 Physical Qualifications for Drivers

## THE DRIVER'S ROLE

Responsibilities, work schedules, physical and emotional demands, and lifestyles among commercial drivers vary by the type of driving that they do. Some of the main types of drivers include the following: turn around or short relay (drivers return to their home base each evening); long relay (drivers drive 8-10 hours and then have an 8-hour off-duty period); straight through haul (cross country); and team drivers (drivers share the driving by alternating their 4-hour driving periods and 4-hour rest periods).

The following factors may be involved in a driver's performance of duties: abrupt schedule changes and rotating work schedules, which may result in irregular sleep patterns and a driver beginning a trip in a fatigued condition; long hours; extended time away from family and friends, which may result in lack of social support; tight pickup and delivery schedules, with irregularity in work, rest, and eating patterns; adverse road, weather, and traffic conditions, which may cause delays and lead to hurriedly loading or unloading cargo in order to compensate for the lost time; and environmental conditions such as excessive vibration, noise, and extremes in temperature. Transporting passengers or hazardous materials may add to the demands on the commercial driver.

There may be duties in addition to the driving task that a driver is responsible and needs to do fit. Some of these responsibilities are: coupling and uncoupling trailer(s) from the tractor, loading and unloading trailer(s) (sometimes a driver may lift a heavy load or unload as much as 50,000 lbs. of freight after sitting for a long period of time, without any stretching period); lifting heavy tarpaulins to cover open top trailer(s). The operating condition of tractor and trailer(s) before, during, and after a trip is the driver's responsibility. The ability to bend and stoop, the ability to maintain a crouching position to inspect the underside of the vehicle, frequent entering and exiting of the cab, and the ability to climb ladders on the tractor and/or trailer(s).

In addition, a driver must have the perceptual skills to monitor a sometimes complex driving situation, the judgment skills to make quick decisions, when necessary, and the manipulative skills to control an oversize steering wheel, shift gears using a manual transmission, and maneuver a vehicle in crowded areas.

## §391.41 PHYSICAL QUALIFICATIONS FOR DRIVERS

(a) A person shall not drive a commercial motor vehicle unless he is physically qualified to do so and, except as provided in §391.67, has on his person the original, or a photographic copy, of a medical examiner's certificate that he is physically qualified to drive a commercial motor vehicle.

(b) A person is physically qualified to drive a motor vehicle if that person:

(1) Has no loss of a foot, a leg, a hand, or an arm, or has been granted a Skill Performance Evaluation (SPE) Certificate (formerly Limb Waiver Program) pursuant to §391.49;

(2) Has no impairment of: (i) A hand or finger which interferes with prehension or power grasping; or (ii) An arm, foot, or leg which interferes with the ability to perform normal tasks associated with operating a commercial motor vehicle; or any other significant limb defect or limitation which interferes with the ability to perform normal tasks associated with operating a commercial motor vehicle; or has been granted a SPE certificate pursuant to §391.49

[illegible lines]

(7) Has no established medical history or clinical diagnosis of rheumatic, arthritic, orthopedic, muscular, neuromuscular, or vascular disease which interferes with his ability to control and operate a commercial motor vehicle safely;

(8) Has no established medical history or clinical diagnosis of epilepsy or any other condition which is likely to cause loss of consciousness or any loss of ability to control a commercial motor vehicle;

(9) Has no mental, nervous, organic, or functional disease or psychiatric disorder likely to interfere with his ability to drive a commercial motor vehicle safely;

(10) Has distant visual acuity of at least 20/40 (Snellen) in each eye without corrective lenses or visual acuity separately corrected to 20/40 (Snellen) or better with corrective lenses, distant binocular acuity of at least 20/40 (Snellen) in both eyes with or without corrective lenses, field of vision of at least 70 degrees in the horizontal meridian in each eye, and the ability to recognize the colors of traffic signals and devices showing standard red, green and amber;

(11) First perceives a forced whispered voice in the better ear at not less than 5 feet with or without the use of a hearing aid or, if tested by use of an audiometric device, does not have an average hearing loss in the better ear greater than 40 decibels at 500 Hz, 1,000 Hz and 2,000 Hz with or without a hearing aid when the audiometric device is calibrated to American National Standard (formerly ASA Standard) Z24.5—1951;

(12) (i) Does not use a controlled substance identified in 21 CFR 1308.11 Schedule I, an amphetamine, a narcotic, or any other habit-forming drug. (ii) Exception. A driver may use a [illegible] substance or drug if the substance or drug is [illegible] prescribed by a licensed medical practitioner who: (A) Is familiar with the driver's medical history and assigned duties; and (B) Has advised the driver that the prescribed substance or drug will not adversely affect the driver's ability to safely operate a commercial motor vehicle; and

(13) Has no current clinical diagnosis of alcoholism.

G.F. Kelley v. U.S. Xpress
Defendant's Doc. Production
D 002519

U.H. Kelley v. U.S. Xpress
D 002520
Defendant's Doc. Production

# Federal Motor Carrier Safety Regulations
## - Advisory Criteria -

## General Information

he purpose of this examination is to determine a driver's physical qualification to operate a commercial motor vehicle (CMV) in interstate commerce according to the requirements in 49 CFR 391.41-49. Therefore, the medical examiner must be knowledgeable of all these requirements and guidelines developed by the FMCSA to assist the medical examiner in making the qualification determination. The medical examiner's environment, familiar with the driver's responsibilities in completing and is similar with the driver's responsibilities in completing and The Driver's Role.

In addition to reviewing the health history section with the driver and conducting the physical examination, the medical examiner should also discuss common prescription and over-the-counter medications relative to the site effects and hazards of these medications while driving. Educate driver to read warning labels for all medications. History of certain conditions may be cause for rejection, particularly if required by a medical specialist, or may indicate the need for additional laboratory tests or more stringent examination perhaps by a medical specialist. These decisions are usually made by the medical examiner in light of the driver's job responsibilities, work schedule and potential for the condition to render the driver unsafe.

Medical conditions should be recorded even if they are not cause for denial, and they should be discussed with the driver to encourage appropriate remedial care. This advice is especially needed when a condition, if neglected, could develop into a serious illness that could affect driving.

If the medical examiner determines that the driver is fit to drive and is also able to perform non-driving responsibilities as may be required, the medical examiner signs the medical certificate which the driver must carry with his/her license. The certificate must be dated. Under current regulations, the certificate is valid for two years, unless the driver has a medical condition that does not prohibit driving but does require more frequent monitoring. In such situations, the medical certificate should be issued for a shorter length of time. The physical examination should be done carefully and at least as complete as is indicated by the attached form. Contact the FMCSA at (202) 366-1790 for further information on the vision exemption, qualifying drivers under 49 CFR 391.64, etc.

## Interpretation of Medical Standards

Since the issuance of the regulations for physical qualifications of commercial drivers, the Federal Motor Carrier Safety Administration (FMCSA) has published recommendations called Advisory Criteria to help medical examiners in determining whether a driver meets the physical qualifications for commercial driving. These recommendations have been condensed to provide information to medical examiners that (1) is directly relevant to the physical examination and (2) is not already included in the medical examination form. The specific regulation is printed in italics and its reference by section is highlighted.

## Loss of Limb:
### §391.41(b)(1)
A person is physically qualified to drive a commercial motor vehicle if that person:

Has no loss of a foot, leg, hand or an arm, or has been granted a Skill Performance Evaluation (SPE) Certificate pursuant to Section 391.49.

## Limb Impairment:
### §391.41(b)(2)
A person is physically qualified to drive a commercial motor vehicle if that person:

Has no impairment of: (i) A hand or finger which interferes with prehension or power grasping; or (ii) An arm, foot, or leg which interferes with the ability to perform normal tasks associated with operating a commercial motor vehicle; or (iii) Any other significant limb defect or limitation which interferes with the ability to perform normal tasks associated with operating a commercial motor vehicle; or (iv) Has been granted a Skill Performance Evaluation Certificate pursuant to Section 391.49.

A person who suffers loss of a foot, leg, hand or arm or whose limb impairment in any way interferes with the safe performance of normal tasks associated with operating a commercial motor vehicle is subject to the Skill Performance Evaluation (SPE) Certification Program pursuant to section 391.49, assuming the person is otherwise qualified.

With the advancement of technology, medical aids and equipment modifications have been developed to compensate for certain disabilities. The SPE Certification Program (formerly the Limb Waiver Program) was designed to allow persons with the loss of a foot or limb or with functional impairment to qualify under the Federal Motor Carrier Safety Regulations (FMCSRs) by use of prosthetic devices or equipment modifications which enable them to safely operate a commercial motor vehicle. Since there are no medical aids equivalent to the original body or limb, certain risks are still present, and thus restrictions may be included on individual SPE certificates when a State Director for the FMCSA determines they are necessary to be consistent with safety and public interest.

If the driver is found otherwise medically qualified (391.41(b)(3) through (13)), the medical examiner must check on the medical certificate that the driver is qualified only if accompanied by a SPE certificate. The driver and the employing motor carrier are subject to appropriate penalty if the driver operates a motor vehicle in interstate or foreign commerce without a current SPE certificate for his/her physical disability.

## Diabetes
### §391.41(b)(3)
A person is physically qualified to drive a commercial motor vehicle if that person:

Has no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control.

Diabetes mellitus is a disease which, among other things, affects the body's ability to utilize sugar. It often results in a loss of consciousness or disorientation in time and space. Individuals who require insulin for control have conditions which can get out of control by the use of too much or too little insulin, or food intake not consistent with the insulin dosage. Incapacitation may occur from symptoms of hyperglycemic or hypoglycemic reactions (drowsiness, semiconsciousness, diabetic coma or insulin shock).

The administration of insulin is, within itself, a complicated process requiring insulin, syringe, needle, alcohol sponge and a sterile technique. Factors related to long-haul commercial motor vehicle operations, such as fatigue, lack of sleep, poor diet, emotional conditions, stress, and concomitant illness, compound the diabetic problem. Because of these inherent dangers, the FMCSA has consistently held that a diabetic who uses insulin for control does not meet the minimum physical requirements of the FMCSRs.

Hypoglycemic drugs, taken orally, are sometimes prescribed for diabetic individuals to help stimulate natural body production of insulin. If the condition can be controlled by the use of oral medication and diet, then an individual may be qualified under the present rule.

(See Conference Report on Diabetic Disorders and Commercial Drivers and Insulin-Using Commercial Motor Vehicle Drivers at:
http://www.fmcsa.dot.gov/rulesregs/medreports.htm)

## Cardiovascular Condition
### §391.41(b)(4)
A person is physically qualified to drive a commercial motor vehicle if that person:

Has no current clinical diagnosis of myocardial infarction, angina pectoris, coronary insufficiency, thrombosis or any other cardiovascular disease of a variety known to be accompanied by syncope, dyspnea, collapse or congestive cardiac failure.

The term "has no current clinical diagnosis of" is specifically designed to encompass: "a clinical diagnosis of (1) a current cardiovascular condition, or (2) a cardiovascular condition which has not fully stabilized regardless of the time limit. The term "known to be accompanied by" is designed to include: a clinical diagnosis of a cardiovascular disease (1)

which is accompanied by symptoms of syncope, dyspnea, collapse or congestive cardiac failure; and/or (2) which is likely to cause syncope, dyspnea, collapse or congestive cardiac failure.

It is the intent of the FMCSRs to render unqualified, a driver who has a current cardiovascular disease which is accompanied by and/or likely to cause symptoms of syncope, dyspnea, collapse, or congestive cardiac failure. However, the subjective decision of whether the nature and severity of an individual's condition will likely cause symptoms of cardiovascular insufficiency is on an individual basis and qualification rests with the medical examiner and the motor carrier. In those cases where there is an occurrence of cardiovascular insufficiency (myocardial infarction, thrombosis, etc.), it is suggested before a driver is certified that he or she have a normal resting and stress electrocardiogram (ECG), no residual complications and no physical limitations, and is taking no medication likely to interfere with safe driving.

Coronary artery bypass surgery and pacemaker implantation are remedial procedures and thus, not unqualifying. Coumadin is a medical treatment which can improve the health and safety of the driver and should not, by its use, medically disqualify the commercial driver. The coumadin should be on the underlying medical condition(s) which require treatment and the general health of this driver. The FMCSR should be consulted at (202) 366-1790 for additional recommendations regarding the physical qualification and/or performance of any task detrimental to safe driving.

*Respiratory Dysfunction*
*§ 391.41(b)(5)*

*A person is physically qualified to drive a commercial motor vehicle if that person:*

Has no established medical history or clinical diagnosis of a respiratory dysfunction likely to interfere with his ability to control and drive a commercial motor vehicle safely.

There are many conditions that interfere with oxygen exchange and may result in incapacitation, including emphysema, chronic asthma, carcinoma, tuberculosis, chronic bronchitis and sleep apnea. If the medical examiner detects a respiratory dysfunction, that in any way is likely to interfere with the driver's ability to safely control and drive a commercial motor vehicle, the driver must be referred to a specialist for further evaluation and therapy. Anticoagulation therapy for deep vein thrombosis and/or pulmonary thrombus/emboli is not unqualifying once optimum dose is achieved, provided lower extremity venous examinations should be made.

---

remain normal and the treating physician gives a favorable recommendation.
(See Conference on Pulmonary/Respiratory Disorders and Commercial Drivers at:
http://www.fmcsa.dot.gov/rulesregs/medreports.htm)

*Hypertension*
*§ 391.41(b)(6)*

*A person is physically qualified to drive a commercial motor vehicle if that person:*

Has no current clinical diagnosis of high blood pressure likely to interfere with ability to operate a commercial motor vehicle safely.

Hypertension alone is unlikely to cause sudden collapse; however, the likelihood increases when target organ damage, particularly cerebral vascular disease, is present. This regulatory criteria is based on FMCSA's Cardiac Conference recommendations, which used the report of the 1984 Joint National Committee on Detection, Evaluation, and Treatment of High Blood Pressure.

A blood pressure of 161-180 and/or 91-104 diastolic is considered mild hypertension, and the driver is not necessarily unqualified during evaluation and institution of treatment. The driver is given a one-time certificate for 3 months to reduce his or her blood pressure to less than or equal to 160/90, the certifying physician should state on the medical certificate that it is only valid for that 3-month period. If the driver is subsequently found qualified with a blood pressure less than or equal to 160/90, the certifying physician may issue a medical certificate for a 1-year period, but should confirm blood pressure current in the third month of this 1-year period.

If on the requalification the blood pressure is greater than 160 systolic and/or 90 diastolic or greater than 160 diastolic or considered moderate to severe. The driver may be re-qualified, even temporarily, until his or her blood pressure is reduced to less than 181/105. By examining physician may temporarily certify the individual once the individual's blood pressure is below 181 and/or 105. For blood pressure greater than 180 and/or 104, documentation of continued control should be made every 6 months. The expiration date must be stated on the medical certificate. Commercial drivers who present for certification with normal blood pressures but are taking medications(s) for hypertension should be certified on the same basis as individuals who present with blood pressures in the mild or moderate to severe range. Annual recertification is recommended if the medical examiner is unable to establish the blood pressure at the time of diagnosis.

An elevated blood pressure finding should be confirmed by at least two subsequent measurements on different days. Inquiry should be made regarding smoking, cardiovascular disease in relatives, and immoderate use of alcohol. An electrocardiogram (ECG) and blood profile, including glucose, cholesterol, HDL cholesterol, creatinine and potassium, should be made. An echocardiogram and chest x-ray are

---

desirable in subjects with moderate or severe hypertension. Since the presence of target organ damage increases the risk of sudden collapse, group 3 or 4 (hypertensive retinopathy, left ventricular hypertrophy) are not otherwise explained (echocardiography or ECG by Estes criteria), evidence of severely reduced left ventricular function, or serum creatinine of greater than 2.5 variants the driver being found unqualified to operate a commercial motor vehicle in interstate commerce.

Treatment includes nonpharmacologic and pharmacologic modalities as well as counseling to reduce other risk factors. Most antihypertensive medications also have side effects, the importance of which must be judged on an individual basis. Individuals must be alerted to the hazards of these medications while driving. Side effects of somnolence or more months after a successful operation for pheochromocytoma, primary aldosteronism (unless bilateral adrenalectomy has been performed), primary aldosteronism diseases, or unilateral renal parenchymal disease, and who shows evidence of target organ damage may be qualified. Hypertension that persists despite surgical intervention or following the guidelines set forth above.
(See Conference on Cardiac Disorders and Commercial Drivers at:
http://www.fmcsa.dot.gov/rulesregs/medreports.htm)

*Rheumatic, Arthritic, Orthopedic, Muscular, Neuromuscular or Vascular Disease*
*§ 391.41(b)(7)*

*A person is physically qualified to drive a commercial motor vehicle if that person:*

Has no established medical history or clinical diagnosis of rheumatic, arthritic, orthopedic, muscular, neuromuscular or vascular disease which interferes with ability to control and operate a commercial motor vehicle safely.

Certain diseases are known to have acute episodes of transient muscle weakness, poor muscular coordination (ataxia), abnormal sensations (paresthesia), decreased muscular tone (hypotonia), visual disturbances and pain which may be suddenly incapacitating. With each recurring episode, these symptoms may become more pronounced and remain for longer periods of time. Other diseases have more insidious onsets and display symptoms of muscle wasting (atrophy), swelling and paresthesia which may not suddenly incapacitate a person but may restrict his/her movements and eventually interfere with the ability to safely operate a motor vehicle. In many instances these diseases are degenerative in nature or may result in deterioration of the involved area.

Once the individual has been diagnosed as having a rheumatic, arthritic, orthopedic, muscular, neuromuscular or vascular disease, then he/she has an established history of that disease. The physician, when examining an individual, should consider the following: (1) the nature and severely

D 002521
Defendant's Doc. Production

If an individual meets the criteria by using a hearing aid, the driver must wear that hearing aid and have it in operation at all times while driving. Also, the driver must be in possession of a spare power source for the hearing aid.

For the whispered voice test, the individual should be stationed at least 5 feet from the examiner with the ear being tested turned toward the examiner. The other ear is covered. Using the breath which remains after a normal expiration, the examiner whispers words or random numbers such as 66, 18, 23, etc. The examiner should not use only sibilants (sounding test materials). The opposite ear should be tested in the same manner. If the individual fails the whispered voice test, the audiometric test should be administered.

If an individual meets the criteria by the use of a hearing aid, the following statement must appear on the Medical Examiner's Certificate "Qualified only when wearing a hearing aid."

(See Hearing Disorders and Commercial Motor Vehicle Drivers at:
http://www.fmcsa.dot.gov/rulesregs/medreports.htm)

## Drug Use
§391.41(b)(12)
A person is physically qualified to drive a commercial motor vehicle if that person:

Does not use a controlled substance identified in 21 CFR 1308.11, Schedule I, an amphetamine, a narcotic, or any other habit-forming drug. Exception: A driver may use such a substance or drug if the substance or drug is prescribed by a licensed medical practitioner who is familiar with the driver's medical history and assigned duties; and has advised the driver that the prescribed substance or drug will not adversely affect the driver's ability to safely operate a commercial motor vehicle.

This exception does not apply to methadone. The intent of the medical certification process is to medically evaluate a driver to ensure that the driver has no medical condition which interferes with the safe performance of driving tasks on a public road. If a driver uses a Schedule I drug or other substance, an amphetamine, a narcotic, or any other habit-forming drug, it may be cause for the driver to be found medically unqualified. Motor carriers are encouraged to obtain a practitioner's written statement about the effects on transportation safety of the use of a particular drug.

A test for controlled substances is not required as part of this biennial certification process. The FMCSA or the driver's employer should be consulted directly for information on controlled substances and alcohol testing under Part 382 of the FMCSRs.

The term "uses" is designed to encompass instances of prohibited drug use determined by a physician through established medical means. This may or may not involve body fluid testing. If body fluid testing takes place, positive test results should be confirmed by a second test of greater specificity. The term "habit-forming" is intended to include any drug or medication generally recognized as capable of becoming habitual, and which may impair the user's ability to operate a commercial motor vehicle safely.

The driver is medically unqualified for the duration of the prohibited drug(s) use and until a second examination shows the driver is free from the prohibited drug(s) use.

Recertification may involve a substance abuse evaluation, the successful completion of a drug rehabilitation program, and a negative drug test result. Additionally, given that the certification period is normally two years, the examiner has the option to certify for a period of less than 2 years if this examiner determines more frequent monitoring is required.

(See Conference on Neurological Disorders and Commercial Drivers and Conference on Psychiatric Disorders and Commercial Drivers at:
http://www.fmcsa.dot.gov/rulesregs/medreports.htm)

## Alcoholism
§391.41(b)(13)
A person is physically qualified to drive a commercial motor vehicle if that person:

Has no current clinical diagnosis of alcoholism.

The term "current clinical diagnosis of" is specifically designed to encompass a current alcoholic illness or those instances where the individual's physical condition has not fully stabilized, regardless of the time element. If an individual shows signs of having an alcohol-use problem, he or she should be referred to a specialist. After counseling and/or treatment, he or she may be considered for certification.

Printed by J. J. KELLER & ASSOCIATES, INC.  Neenah, WI · USA
(800) 327-6868 · Copyright/our care · Printed in the United States

G.F. Kelley v. U.S. Xpress
Defendant's Doc. Production
D 002522
649-F (Si
(Rev. 4

AUG-08-2005 MON 01:3E PM  KELLY TRUCKING                      8125E3852272              P. 001/004

DAC
ACMMR

*handwritten:* Michelle ext. 378
fax 423 510-6138

## U. S. XPRESS, INC.
4080 Jenkins Road · Chattanooga, TN 37421

## DRIVER APPLICATION

This application is current for thirty (30) days only. Thereafter, if you wish to be considered for employment, you must fill out a new application. All information must be completed. If a question does not apply, write NONE or "0". PLEASE PRINT.

APPLICANTS, DO NOT WRITE ABOVE THIS LINE.

## PERSONAL

NAME _Denney_ _Gordon_ _McKinley_   SOCIAL SECURITY # ▮▮▮
       LAST    FIRST    MIDDLE

OTHER NAMES USED _None_

DATE OF BIRTH ▮▮▮   ADDRESS _Denney G @ Bell South . Com_

ADDRESS _2340 Co Rd 150_   _Lafayett_   PHONE # ▮▮▮
        STREET              CITY

_Al_          _36862_   CELL PHONE # ▮▮▮
STATE

NOTIFY IN CASE OF EMERGENCY _Sue Denney_   PHONE # ▮▮▮
                                                    AREA CODE

ADDRESS _Same_
        STREET    CITY    STATE    ZIP

REFERRED TO USX BY WHOM? _Kelly_

## RESIDENCE ADDRESS

LIST RESIDENCE ADDRESSES FOR THE PAST 3 YEARS.

(1) FROM _198'_ TO _Now_   _2340 Co. Rd. 150 Lafayotte Al 36862_
                            STREET    CITY    STATE    ZIP

(2) FROM _____ TO _____   _____
                          STREET    CITY    STATE    ZIP

(3) FROM _____ TO _____   _____
                          STREET    CITY    STATE    ZIP

## EDUCATION

TRUCK DRIVING SCHOOL

HAVE YOU ATTENDED TRUCK DRIVING SCHOOL? ☐ YES ☑ NO   GRADUATION DATE _____

NAME _____   LOCATION: _____

## MILITARY STATUS

HAVE YOU SERVED IN THE U.S. ARMED FORCES? ☐ YES ☑ NO

BRANCH _____   DATES: FROM _____ TO _____

ARE YOU CURRENTLY A MEMBER OF THE ACTIVE RESERVES OR NATIONAL GUARD? ☐ YES ☑ NO

LIST ANY SPECIAL SKILLS OR TRAINING THAT YOU RECEIVED _____

G.F. Kelley v. U.S. Xpress
D 002523
Defendant's Doc. Production

G.F. Kelley v. U.S. Xpress
D 002524
Defendant's Doc. Production

Den

* Disclosure of this information does not necessarily disqualify you from consideration.

G.F. Kelley v. U.S. Xpress
D 002525
Defendant's Doc. Production

| | | | POV | CMV |
| | | | POV | CMV |
| | | | POV | CMV |

## AGREEMENT (PLEASE READ THE FOLLOWING STATEMENTS CAREFULLY)

I understand that U.S. Xpress Enterprises, Inc. and its subsidiaries follow the practice of requiring others applicants to successfully complete a DOT physical, drug test, alcohol test or other tests, as a term and condition of qualification and from time to time thereafter to submit to a DOT physical, drug test, alcohol test, or other tests, upon request, as a term and condition of continued qualification. I hereby knowingly and freely give my consent to submit to DOT physical, drug tests, alcohol tests, or other tests, and further agree to submit to DOT physical, drug test, alcohol test, or other tests from time to time when so requested. I understand that any job offer is contingent upon obtaining DOT certification as well as successful completion of this application.

In conjunction with my application for qualification with you, I understand that an investigative consumer report(s) are being requested that will include information as to my character, credit history, work habits, performance, experience, accident history, drug and alcohol test results, including results from any pre-employment drug and/or alcohol test, along with reasons for termination of past employment obtained from previous employers. Further, I understand that you will be requesting information concerning my driving record and/or information from various state agencies via state/government records concerning track record, criminal history, traffic offenses and accidents, as well as information concerning my previous driving record requests made by others from such state agencies. I understand that I have a right to make a written request within a reasonable amount of time to receive additional detailed information about the nature and scope of this investigation. I hereby authorize U.S. Xpress Enterprises, Inc. and its subsidiaries to obtain the above-described information, and agree that such information, and my experience history with you if I am qualified, will be supplied to other companies.

I further consent to your furnishing to consumer reporting services information concerning my character, work habits, performance, driving record and experience, as well as any reasons for termination of my qualifications, including drug and alcohol test results, and further consent to these services furnishing such information in the future to other companies which subscribe to these services from which I am seeking employment.

This certifies that this application was completed by me and that all entries on it are true and complete to the best of my knowledge. I also agree that falsified information and significant omissions may result in my disqualification now or at any time. I understand that U.S. Xpress Enterprises, Inc. and its subsidiaries use an electronic filing and signature system which includes the imaging and storing of my employment applications. Therefore, my original paper application will not be retained. I understand that an electronic signature will be binding upon me in the same extent as if handwritten.

I understand that my qualification can be terminated, with or without cause, at any time at the discretion of either the company or myself.

In accordance with Section(s) 382.405, 382.413 & 391.23 of the Federal Motor Carrier Safety Regulations, I authorize any and all persons and/or institutions to provide any relevant information, including my alcohol and controlled substances testing/training and accident history that may be required to complete my qualification and I agree to release them from any and all liability for supplying said information.

Signature: _Gordon M Delaney_    Date: **8-14-05**

G.F. Kelley v. U.S. Xpress
D 002526
Defendant's Doc. Production

➡ VERIFIED BY: *Eldris Adams*    POSITION *Recruiting*    DATE *8/24/05*
Print Name
Please complete as much information as possible so that we can assure that are roads are safe
for your family and ours.

8I's signature _____ Sara Romero_____ Date ___8/19/05___

US XPRESS | Sara Romero | 800.251.6291 x3350 | 423-510-6082 Fax | sromero@usxpress.com

G.F. Kelley v. U.S. Xpress
D 002527
Defendant's Doc. Production

NO

EXPERIENCE
EQUIPMENT

G.F. Kelley v. U.S. Xpress
D 002528
Defendant's Doc. Production



G.F. Kelley v. U.S. Xpress
D 002529
Defendant's Doc. Production



G.F. Kelley v. U.S. Xpress
D 002530
Defendant's Doc. Production

## APPLICANTS AUTHORIZATION
## TO OBTAIN PAST DRUG AND ALCOHOL TEST RESULTS

I, *Gordon M Kenney*, understand that as a condition of hire with U. S. Xpress, I must give U. S. Xpress written authorization to obtain the results of all D.O.T. required drug and/or alcohol tests (including any refusals to be tested) from all of the companies for which I worked as a driver, or for which I took a pre-employment drug and/or alcohol test, during the past (3) years. I have also been advised and understand that my signing of this authorization does not guarantee me a job or guarantee that I will be offered a position with U. S. Xpress.

Below I have listed all of the companies for which I have worked for as a driver, or to which I applied as a driver during the last (3) years. I hereby authorize U. S. Xpress to obtain from those companies, and I hereby authorize those companies to furnish to U. S. Xpress the following information concerning my drug and alcohol tests: (i) all positive drug tests results during the past three (3) years; (ii) all alcohol test results of 0.04 or greater during the past three (3) years; (iii) all alcohol tests results of 0.02 or greater but less than 0.04 during the past three (3) years; (iv) all instances in which I refused to submit to a D.O.T. required drug and/or alcohol test during the past three (3) years.

The following is a list of all the companies for which I worked as a driver, or for which I attended orientation as a driver, during the past three (3) years:

| Company name and phone number | Dates worked for/applied: |
|---|---|
| *Kelly Trucking* | *Last 6 yrs only* |
| | |
| | |
| | |
| | |

## APPLICANTS CERTIFICATION:

I have carefully read and fully understand this authorization to release my past drug and alcohol test results. In signing below, I certify that all of the information, which I have furnished, on this form is true and complete, and that I have identified all of the companies for which I have either worked, or applied for work, as a driver during the past two years.

| *Gordon M Kenney* | ▇▇▇▇▇▇▇ | *8-22-05* |
|---|---|---|
| Signature of applicant | SSN | DATE |

G.F. Kelley v. U.S. Xpress
D 002531
Defendant's Doc. Production

# RECORD OF ROAD TEST

Check only these items on which the driver's performance is unsatisfactory. Explain unsatisfactory items under remarks.

Name _Gordon M Denney_  Address _2340 Co Rd 150    LaFayeTT Al 36862_

License No. _5063302_  State _A_  Equipment Driven: Tractor _FT LONE VOLVO_ Trailer _FT_

Road Test _Satisfy_ by _Mullins_  Date _4-11-23_

**1 1 – Pre-Trip Inspection and Emergency Equipment**

| | |
|---|---|
| cks general condition approaching unit | _____ |
| ks for leakage of coolants, fuel and lubricants | _____ |
| cks under the hood - oil, water, general condition | _____ |
| engine compartment and steering | _____ |
| cks around the unit - tires, lights, trailer hookup | |
| ike and light lines, body, doors, horn, windshield | |
| pers, rear end protection (bumper) | |
| brake action, tractor protection valve, and | |
| rking (hand) brake | _____ |
| ws use of jacks, tools, emergency warning devices, | |
| y chains, fire extinguisher, spare fuses, and | |
| ur way flashers | _____ |
| cks instruments | |
| ns windshield, windows, mirrors, lights, and | |
| flectors | _____ |

**1 2 – Placing vehicle in motion and use of controls**

**Engine**

| | |
|---|---|
| ts engine without difficulty | _____ |
| ows proper warm-up | _____ |
| lerstands gauges on instrument panel | _____ |
| intains proper engine speed while driving | _____ |
| ic Knowledge of motors - gas, diesel | _____ |
| use of motor | _____ |

**Clutch and Transmission**

| | |
|---|---|
| ts loaded unit smoothly | _____ |
| es clutch properly | _____ |
| nes gearshifts properly | _____ |
| fts gears smoothly | _____ |
| es proper gear sequence | _____ |

**Brakes**

| | |
|---|---|
| derstands operating principles of air brakes | _____ |
| ows proper use of tractor protection valve | _____ |
| derstands low air warning | _____ |
| d brakes before starting trip | _____ |

| | |
|---|---|
| ls to check traffic conditions & signal | |
| hen pulling out from parked position | _____ |
| ks in illegal or unsafe location | _____ |

**Parking (road)**

| | |
|---|---|
| ks off pavement | _____ |
| oids parking on soft shoulder | _____ |
| es emergency warning signals when | |
| equired | _____ |
| cured unit properly | _____ |

**D. Steering**

| | |
|---|---|
| Fights steering wheel | _____ |
| Allows truck to wander | _____ |

**E. Lights**

| | |
|---|---|
| Knows lighting regulations | _____ |
| Uses proper headlight beam | _____ |
| Dim lights when meeting or following other vehicles | _____ |
| Adjust speed to range of headlights | _____ |
| Proper use of auxiliary lights | _____ |

**Part 3 – Coupling and Uncoupling**

| | |
|---|---|
| Lines up units | _____ |
| Hooks brake and light lines properly | _____ |
| Secures trailer against movement | _____ |
| Backs under slowly | _____ |
| Tests hookup with power | _____ |
| Checks hookup visually | _____ |
| Handles landing gear properly | _____ |
| Proper hook-up of full trailer | _____ |
| Secures power unit against movement | _____ |

**Part 4 – Backing and Parking**

**A. Backing**

| | |
|---|---|
| Gets out and checks before backing | _____ |
| Looks back as well as uses mirror | _____ |
| Gets out and rechecks conditions on long back | _____ |
| Avoids backing from blind spot | _____ |
| Signals when backing | _____ |
| Controls speed and direction properly while backing | _____ |

**B. Parking (city)**

| | |
|---|---|
| Takes too many pull ups | _____ |
| Hits nearby vehicles or stationary objects | _____ |
| Hits curb | _____ |
| Parks too far from curb | _____ |

**D. Grade Crossings**

| | |
|---|---|
| Adjusts speed to conditions | _____ |
| Makes safe stop, if required | _____ |
| Selects proper gear | _____ |

**F. Speed**

| | |
|---|---|
| Speed consistent with basic ability | _____ |
| Adjusts speed properly to road, weather, traffic conditions, legal limits | _____ |
| Slows down for rough roads | _____ |
| Slows down in advance of curves | _____ |

G.F. Kelley v. U.S. Xpress
D 002532

Intersections etc
Maintains consistent speed

### 15 - Slowing and Stopping

Signals properly in descending

Slows down properly

Stops and remains without rolling back

Brakes at top of hills

Uses brakes properly on grades

Observes to check traffic to rear

Avoids following traffic

Avoids sudden stops

Stops smoothly without excessive

Timing

Stops before crossing sidewalk, when

Coming out of driveway or alley

Stops clear of pedestrian crosswalk.

### 16 - Operating in traffic Passing and Turning

**Turning**

Gets in proper lane well in advance

Signals well in advance

Checks traffic conditions and turns only when

Way is clear

Does not swing wide or cut short while turning

**Traffic Signs and Signals**

Does not approach signal prepared to stop if

necessary

Observes traffic signal

Obeys yellow light

Not up too fast or too slow on green

Fails to notice or heed traffic signs

Obeys "stop" signs

**Intersections**

Adjusts speed to permit stopping if necessary

Checks for cross traffic regardless of traffic controls

Yields right-of-way for safety

**Passing**

Passes with insufficient clear space

ahead

Passes in unsafe location/hill, curve.

intersection

Fails to signal change of lanes

Pulls out and back - uncertain

Tailgates waiting chance to pass

Picks traffic with slow pass

Cuts in too short returning to right lane

### G. Courtesy and Safety

Depends on others for safety

Yields right-of-way for safety

Fails to go ahead when given right-of-
way by others

Tends to crowd other drivers or force
way through traffic

Fails to allow faster traffic to pass

Fails to keep right and in own lane

Unnecessary use of horn

Other discourtesy or improper conduct

### Part 7 - Miscellaneous

#### A. General Driving Ability and Habits

Consistently alert and attentive

Consistently aware of changing traffic
conditions

Adjusts driving to meet changing
conditions

Performs routine functions without taking
eyes from road

Checks instruments regularly

Willing to take instructions & suggestions

Adequate self-confidence in driving

Nervous, apprehensive

Easily angered

Complains too much

Personal appearance, manner, cleanliness

Physical Stamina

#### B. Handling of Freight

Checks freight properly

Handles and loads freight properly

Handles bills properly

Breaks down load as required

#### C. Rules and Regulations

Knowledge of company rules

Knowledge of regulations, federal, state
local

Knowledge of special truck routes

#### D. Use of Special Equipment (specify)

**Remarks:**

OK For 1st seal

Overall Performance: Satisfactory ___ X ___  Needs Training _____  Unsatisfactory _____

Qualified for: Truck ___ X ___ Tractor-Semi trailer ___ X _____ Other _____

Signature of Examiner _Wallace L. Beard_ _____

G.F. Kelley v. U.S. Xpress
D 002533
Defendant's Doc. Production

## Certificate of Compliance
### Verification of Single License Traffic Violation Reporting

### Notice to Drivers

The Commercial Motor Vehicle Safety Act of 1986 provides for a new set of controls over the drivers of commercial vehicles. The new law applies to all drivers operating vehicles and combinations with a Gross Vehicle Weight rating over 26,000 pounds and to any vehicle regardless of weight transporting hazardous materials.

The following provisions of this legislation become effective July 1, 1987:

1. ~~No driver may possess more than one license and no motor carrier may use a driver having more than one license.~~ A limited exception is made for drivers who are subject to non-resident licensing requirements of any state. This exception does not apply after December 31, 1989.
2. A driver convicted of a traffic violation (other than parking) must notify the motor carrier AND the state which issued the license to that driver of such conviction within 30 days.
3. Any person applying for a job as a commercial vehicle driver must inform the prospective employer of all previous employment as the driver of a commercial vehicle for the past 10 years, in addition to any other required information about the applicant's employment history.
4. Any violation is punishable by a fine not to exceed $2500. In addition, the Federal Motor Carrier Safety Regulations now require that a driver who loses any privilege to operate a commercial vehicle or who is disqualified from operating a commercial vehicle must advise the motor carrier the next business day after receiving notification of such action.

---

## To Be Retained By Motor Carrier

### Certification by Driver

I hereby certify that I have read and understand the driver provisions of the Commercial Motor Vehicle Safety Act of 1986, which became effective on July 1, 1987.

Driver's Name _Gordon M Denney_     SS# █████████████

Address _2340 Co Rd 150 LaFayett Al 36862_

License: State _Al_ Class _AM_ License # _506 3307_

I further certify that the above commercial vehicle license is the only one held or that I have surrendered the following licenses to the states indicated.

State _Non_ Class _____ License # _____

State _____ Class _____ License # _____

Driver's Signature: _Gordon M Denney_

G.F. Kelley v. U.S. Xpress
D 002534
Defendant's Doc. Production

☐ U.S. XPRESS, INC.   ☐ XPRESS GLOBAL SYSTEMS

## CERTIFICATION OF ROAD TEST

Driver's Name _Gordon M Denney_

Social Security No. ██████████

Commercial Driver's License No. _5 0 6 3 3 0 2_

State _A I_   Location of Test: _Whalley_

Type of Power Unit: _VIR_   Type of Trailer(s) _5 3_

This is to certify that the above driver was given a road test under my supervision

on _Aug 23_ , 20_05_

consisting of approximately _30_ miles of driving.

It is my considered opinion that this driver possesses sufficient driving skills to operate safely the type of commercial motor vehicle listed above.

_William L Beard_ _____ SAFETY DEPT
Signature of Examiner

In compliance with D.O.T. regulation 395.2, you are hereby notified that you are relieved from any and all duty when making meal or routine stops while en route to a destination. The duration of your relief shall not be less than 30 minutes or more than 1 hour 30 minutes. The meal or routine stop may be logged as "off duty" time.

## CERTIFICATION OF

Instruction in the transportation of Hazardous Materials in accordance with title 49, parts 397, 100-177 and the use of Emergency Response Guide Book.

Date _8-23-05_ Driver's Signature _Gordon M Denney_

_____ SAFETY DEPT
Instructor's Signature

G.F. Kelley v. U.S. Xpress
D 002535
Defendant's Doc. Production

# NOTICE TO ALL DRIVERS

The cornerstone of any motor carrier safety program is driver compliance with logging regulations. These regulations assure a rested driver who is less likely to have an accident. As most of you are aware, the United States Department of Transportation and the various state enforcement agencies have an intensified enforcement program in regards to log compliance among drivers of tractor-trailer equipment.

One of the recurring problems is the falsification of daily logs by the drivers. Not only is this illegal, but it places the Carrier, and you, the Driver in a position to be fined for each violation by the U.S. DOT. We need your help in controlling these log violations.

Do not exceed your hours of service. Remember you must have a 10 hour break after 11 hours of driving, you cannot drive after having worked more than 14 consecutive hours and you cannot exceed 70 hours in 8 days. If you are having problems completing your logs as required by the DOT and the Company, contact the Safety Department. We appreciate and thank you for your continued cooperation.

Safety Department

## 7-Day Backlog

Full Name of Driver (Print): **Gordon M Denney**

Social Security Number: ▓▓▓▓▓▓▓▓▓▓

Motor Vehicle Operators License Number: **506 3302**

Type of License: **A**    Issuing State: **AL**    Exp. Date: **3-23-08**

| Day | 1 | 2 | 3 | 4 | 5 | 6 | 7 | Total |
|---|---|---|---|---|---|---|---|---|
| Date | 8/15/05 | 8/16/05 | 8/17/05 | 8/18/05 | 8/19/05 | 8/20/05 | 8/21/05 | |
| Hours Worked | �e | 0 | �e | 0 | 0 | 0 | 0 | |

I qualify for the 34-hour restart exception during this period, as I was off duty for over 34 consecutive hours from _115_ am/**pm** _8/19 05_ through _2:00_ am/pm _8/22/05_.

I hereby certify that the information given above is correct to the best of my knowledge and belief, and that I was last relieved from work at:

_1:15pm_ . _19_ . _8_ . _05_ .
Time . Day . Month . Year

Driver's Signature: _Gordon M Denney_    Date: _8-22-05_

G.F. Kelley v. U.S. Xpress
D 002536
Defendant's Doc. Production



G.F. Kelley v. U.S. Xpress
D 002537
Defendant's Doc. Production