# EXHIBIT 70

# Result Report

### *Confidential*

08/24/2005

U.S. Xpress
4080 Jenkins Road
CHATTANOOGA, TN 37421
Location: USXpress

Attn:     DER

Re:     SSN███████/Name: Toby Hilyer
        Specimen ID #:███████

The above referenced employee submitted a Drug Screen specimen for DOT, Pre-employment substance abuse testing in accordance with applicable federal regulations, including 49 CFR part 40 and 382, on 08/23/2005.



G.F. Kelley v. U.S. Xpress
D 000562
Defendant's Doc. Production

SPECIMEN ID NO. **106565443**

STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

ADVANCED TOXICOLOGY NETWORK
3560 Air Center Cove, Memphis, TN 38118 (888)222-4894

A. Employer Name, Address, I.D. No.    115030

CV Xpress/Laredo
P.O. Box 425
Lowell, AR 72745
PH: 423-510-3550 FX: 423-510-9782

B. MRO Name, Address, Phone and Fax No.

Profile # 100537
OTMI-Robert Pilug, MD
8558 Hwy. 23, Ste. A
Belle Chasse, LA 70037
PH: 504-392-0131    FX: 714-385-5214

I certify that I provided my urine specimen to the collector; that I have not adulterated it in any manner; each specimen bottle used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen bottle is correct.

X _Toby C. Hilyer_    _Toby C. Hilyer_    _8/23/05_

Signature of Donor

Daytime Phone No. (_334_) _318-0189_    Evening Phone No. (_334_) _318-0189_    (PRINT) Donor's Name (First, MI, Last)    Date of Birth

Should the results of the laboratory tests for the specimen identified by this form be confirmed positive, the Medical Review Officer will contact you to ask about prescriptions and over-the-counter medications you may have taken. Therefore, you may want to make a list of those medications for your own records. THIS LIST IS NOT NECESSARY. If you choose to make a list, do so either on a separate piece of paper or on the back of your copy (Copy 5).–DO NOT PROVIDE THIS INFORMATION ON THE BACK OF ANY OTHER COPY OF THE FORM. TAKE COPY 5 WITH YOU.

STEP 6: COMPLETED BY MEDICAL REVIEW OFFICER - PRIMARY SPECIMEN

In accordance with applicable Federal requirements, my determination/verification is:

☐ NEGATIVE    ☐ POSITIVE    ☐ TEST CANCELLED    ☐ REFUSAL TO TEST BECAUSE:
☐ DILUTE                                        ☐ ADULTERATED    ☐ SUBSTITUTED

G.F. Kelley v. U.S. Xpress
D 000647
Defendant's Doc. Production

REMARKS _____

X _____

Signature of Medical Review Officer    (PRINT) Medical Review Officer's Name (First, MI, Last)    Date (Mo./Day/Yr.)

STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER - SPLIT SPECIMEN

In accordance with applicable Federal requirements, my determination/verification for the split specimen (if tested) is:

☐ RECONFIRMED    ☐ FAILED TO RECONFIRM - REASON _____

X _____

Signature of Medical Review Officer    (PRINT) Medical Review Officer's Name (First, MI, Last)    Date (Mo./Day/Yr.)

G.F. Kelley v. U.S. Xpress
D 000563
Defendant's Doc. Production



**STEP 6: COMPLETED BY MEDICAL REVIEW OFFICER - PRIMARY SPECIMEN**

*In accordance with applicable Federal requirements, my determination/verification is:*

☐ NEGATIVE    ☐ POSITIVE    ☐ TEST CANCELLED    ☐ REFUSAL TO TEST BECAUSE:
☐ DILUTE                                          ☐ ADULTERATED    ☐ SUBSTITUTED

G.F. Kelley v. U.S. Xpress
D 000437
Defendant's Doc. Production

REMARKS _____

X _____
Signature of Medical Review Officer     (PRINT) Medical Review Officer's Name (First, MI, Last)     Date (Mo./Day/Yr.)

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER - SPLIT SPECIMEN**

*In accordance with applicable Federal requirements, my determination/verification for the split specimen (if tested) is:*

☐ RECONFIRMED          ☐ FAILED TO RECONFIRM - REASON _____

X _____
Signature of Medical Review Officer     (PRINT) Medical Review Officer's Name (First, MI, Last)     Date (Mo./Day/Yr.)

G.F. Kelley v. U.S. Xpress
D 001237
Defendant's Doc. Production

# Medical Examination Report

## FOR COMMERCIAL DRIVER FITNESS DETERMINATION

649-F (6045)

**1. | DRIVER'S INFORMATION** | Driver completes this section.

| Driver's Name (Last, First, Middle) | Social Security No. | Birthdate | Age | Sex | | |
|---|---|---|---|---|---|---|
| HILYeR  ToBY CHaRles | | | 40 | ☒ M  ☐ F | ☐ New Certification  ☒ Recertification  ☐ Follow Up | Date of Exam  8-24-05 |

| Address | City, State, Zip Code | Work Tel. (334) 318-0189 | Driver License No. | License Class | State of Issue |
|---|---|---|---|---|---|
| 3583  WaReingwood DR, | montgomeRY  AL, 36109 | Home Tel. (334) 356-3616 | 4885915 | ☒ A  ☐ C  ☐ B  ☐ D | AL |

---

I certify that the above information is complete and true. I understand that inaccurate, false, or missing information may invalidate the examination and my Medical Examiner's Certificate.

*Toby C. Hilyer*
_____      8-24-05
Driver's signature                                  Date

Medical Examiner's Comments on Health History (The medical examiner must review and discuss with the driver any "yes" answers and potential hazards of medications, including over-the-counter medications, while driving. This discussion must be documented below.)

L. Average:
G.F. Kelley v. U.S. Xpress
D 001238

If makes standard complete a Medical Examiner's Certificate according to 49 CFR 391.43(b). (Driver must carry certificate when operating a commercial vehicle.)

G.F. Kelley v. U.S. Xpress
D 001239

D 001240
Defendant's Doc. Production

## 49 CFR 391.41 Physical Qualifications for Drivers

THE DRIVER'S ROLE: Responsibilities, work schedules, physical and emotional demands, and lifestyles among commercial drivers vary by the type of driving they do. Some of the main types of drivers include the following: turn around or short relay (drivers return to their home base each evening); long relay (drivers drive 9-11 hours and then have at least a 10-hour off-duty period), straight through haul (cross country drivers); and team drivers (drivers share the driving by alternating their 5-hour driving periods and 5-hour rest periods).

The following factors may be involved in a driver's performance of duties: abrupt schedule changes and rotating work schedules, which may result in irregular sleep patterns and a driver beginning a trip in a fatigued condition; long hours; extended time away from family and friends, which may result in lack of social support; tight pickup and delivery schedules, with irregularity in work, rest, and eating patterns, adverse road, weather and traffic conditions, which may cause delays and lead to hurriedly loading or unloading cargo in order to compensate for the lost time; and environmental conditions such as excessive vibration, noise, and extremes in temperature. Transporting passengers or hazardous materials may add to the demands on the commercial driver.

There may be duties in addition to the driving task for which a driver is responsible and needs to be fit. Some of these responsibilities are: coupling and uncoupling trailer(s) from the tractor, loading and unloading trailer(s) (sometimes a driver may lift a heavy load or unload as much as 50,000 lbs. of freight after sitting for a long period of time without any stretching period); inspecting the operating condition of tractor and/or trailer(s) before, during, and after delivery of cargo; lifting, installing, and removing heavy tire chains; and lifting heavy tarpaulins to cover open top trailers. The above tasks demand agility, the ability to bend and stoop, the ability to maintain a crouching position to inspect the underside of the vehicle, frequent entering and exiting of the cab, and the ability to climb ladders on the tractor and/or trailer(s).

In addition, a driver must have the perceptual skills to monitor a sometimes complex driving situation, the judgment skills to make quick decisions, when necessary, and the manipulative skills to control an oversize steering wheel, shift gears using a manual transmission, and maneuver a vehicle in crowded areas.

§391.41 PHYSICAL QUALIFICATIONS FOR DRIVERS: (a) A person shall not drive a commercial motor vehicle unless he is physically qualified to do so and, except as provided in §391.67, has on his person the original or a photographic copy, of a medical examiner's certificate that he is physically qualified to drive a commercial motor vehicle.

(b) A person is physically qualified to drive a motor vehicle if that person:
(1) Has NO loss of a foot, a leg, a hand, or an arm, or has been granted a Skill Performance Evaluation (SPE) Certificate (formerly Limb Waiver Program) pursuant to §391.49.
(2) Has no impairment of: (i) A hand or finger which interferes with prehension or power grasping; or (ii) An arm, foot, or leg which interferes with the ability to perform normal tasks associated with operating a commercial motor vehicle; or any other significant limb defect or limitation which interferes with the ability to perform normal tasks associated with operating a commercial motor vehicle; or has been granted a SPE Certificate pursuant to §391.49;
(3) Has an established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control;
(4) Has no current clinical diagnosis of myocardial infarction, angina pectoris, coronary insufficiency, thrombosis, or any other cardiovascular disease of a variety known to be accompanied by syncope, dyspnea, collapse, or congestive cardiac failure.
(5) Has an established medical history or clinical diagnosis of a respiratory dysfunction likely to interfere with his ability to control and drive a commercial motor vehicle safely.
(6) Has no current clinical diagnosis of high blood pressure likely to interfere with his ability to operate a commercial motor vehicle safely.
(7) Has an established medical history or clinical diagnosis of rheumatic, arthritic, orthopedic, muscular, neuromuscular, or vascular disease which interferes with his ability to control and operate a commercial motor vehicle safely.
(8) Has no established medical history or clinical diagnosis of epilepsy or any other condition which is likely to cause loss of consciousness or any loss of ability to control a commercial motor vehicle;
(9) Has no mental, nervous, organic, or functional disease or psychiatric disorder likely to interfere with his ability to drive a commercial motor vehicle safely;
(10) Has distant visual acuity of at least 20/40 (Snellen) in each eye without corrective lenses or visual acuity separately corrected to 20/40 (Snellen) or better with corrective lenses, distant binocular acuity of at least 20/40 (Snellen) in both eyes with or without corrective lenses, field of vision of at least 70 degrees in the horizontal meridian in each eye, and the ability to recognize the colors of traffic signals and devices showing standard red, green and amber;
(11) First perceives a forced whispered voice in the better ear not less than 5 feet with or without the use of a hearing aid or, if tested by use of an audiometric device, does not have an average hearing loss in the better ear greater than 40 decibels at 500 Hz, 1,000 Hz and 2,000 Hz with or without a hearing aid when the audiometric device is calibrated to the American National Standard (formerly ASA Standard) Z24.5-1951;
(12) (i) Does not use a controlled substance identified in 21 CFR 1308.11 Schedule 1, an amphetamine, a narcotic, or any other habit-forming drug. (ii) Exception: A driver may use such a substance or drug, if the substance or drug is prescribed by a licensed medical practitioner who: (A) Is familiar with the driver's medical history and assigned duties; and (B) Has advised the driver that the prescribed substance or drug will not adversely affect the driver's ability to safely operate a commercial motor vehicle; and
(13) Has no current clinical diagnosis of alcoholism.

## INSTRUCTIONS TO THE MEDICAL EXAMINER

**General Information:** The purpose of this examination is to determine a driver's physical qualification to operate a commercial motor vehicle (CMV) in interstate commerce according to the requirements in 49 CFR 391.41-49. Therefore, the medical examiner must be knowledgeable of these requirements and guidelines developed by the FMCSA to assist the medical examiner in making the qualification determination. The medical examiner should be familiar with the driver's responsibilities and work environment and is referred to the section on the form, The Driver's Role.

In addition to reviewing the Health History section with the driver and conducting the physical examination, the medical examiner should discuss common prescription and over-the-counter medications relative to the side effects and hazards of these medications while driving. Educate the driver in read warning labels on all medications. History of certain conditions may be cause for rejection, particularly if required by regulation or may indicate the need for additional laboratory tests or more stringent examination perhaps by a medical specialist. These decisions are usually made by the medical examiner in light of the driver's job responsibilities, work schedule and potential for condition to render the driver unsafe.

Medical conditions should be recorded even if they are not cause for denial, and they should be discussed with the driver to encourage appropriate remedial care. This advice is especially needed when a condition, if neglected, could develop into a serious illness that could affect driving.

If the medical examiner determines that the driver is fit to drive and is also able to perform non-driving responsibilities as may be required, the medical examiner signs the medical certificate which the driver must carry with his/her license. The certificate must be dated. Under current regulations, the certificate is valid for two (2) years. However, the driver has a medical condition that does not prohibit driving but does require more frequent monitoring, the medical certificate should be issued for a shorter length of time. The physical examination should be done carefully and at least as complete as is indicated by the attached form. Contact the FMCSA at (202) 366-1790 for further information (a vision exception, qualifying drivers under 49 CFR 391.64, etc.).

**Interpretation of Medical Standards:** Since the issuance of the regulations for physical qualifications of commercial drivers, the Federal Motor Carrier Safety Administration (FMCSA) has published recommendations called Advisory Criteria to help medical examiners in determining whether a driver meets the physical qualifications for commercial driving. These recommendations have been condensed to provide information to medical examiners that (1) is directly relevant to the physical examination and (2) is not already included in the medical examination form. The specific regulation is printed in italics and its reference by section is highlighted.

## Federal Motor Carrier Safety Regulations – Advisory Criteria –

**Loss of Limb: §391.41(b)(1):** A person is physically qualified to drive a commercial motor vehicle if that person: Has no loss of a foot, leg, hand or an arm, or has been granted a 'Skill Performance Evaluation (SPE) Certificate pursuant to Section 391.49.

**Limb Impairment: §391.41 (b)(2):** A person is physically qualified to drive a commercial motor vehicle if that person: Has no impairment of (i) A hand or finger which interferes with prehension or power grasping; or (ii) An arm, foot, or leg which interferes with the ability to perform normal tasks associated with operating a commercial motor vehicle; or (iii) Any other significant limb defect or limitation which interferes with the ability to perform normal tasks associated with operating a commercial motor vehicle; or (iv) Has been granted a Skill Performance Evaluation (SPE) Certificate pursuant to Section 391.49.

A person who suffers loss of a foot, leg, hand or arm or whose limb impairment in any way interferes with the safe performance of normal tasks associated with operating a commercial motor vehicle is subject to the Skill Performance Evaluation Certification Program pursuant to section 391.49, assuming the person is otherwise qualified.

With the 'advancement' of 'technology,' 'medical' aids 'and' 'equipment modifications have been developed to compensate for certain disabilities. The SPE Certification Program (formerly the Limb Waiver Program) was designed to allow persons with the loss of a foot or limb or with functional impairment to qualify under the Federal Motor Carrier Safety Regulations (FMCSRs) by use of prosthetic devices or equipment modifications which enable them to safely operate a commercial motor vehicle. Since there are no medical aids equivalent to the original body or limb, certain risks are still present, and thus restrictions may be included on individual SPE certificate when a State Director for the FMCSA determines they are necessary to be consistent with safety and public interest.

If the driver is found otherwise medically qualified (391.41(b)(3) through (13)), the medical examiner must check on the medical certificate that the driver is qualified only if accompanied by a SPE certificate. The driver and the employing motor carrier are subject to appropriate penalty if the driver operates a motor vehicle in interstate or foreign commerce without a current SPE certificate for his/her physical disability.

**Diabetes: §391.41 (b)(3):** A person is physically qualified to drive a commercial motor vehicle if that person: Has no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control.

Diabetes mellitus is a disease which, on occasion, can result in a loss of consciousness or disorientation in time and space. Individuals who require insulin for control have conditions which can get out of control by the use of too much or too little insulin, or food intake not consistent with the insulin dosage. Incapacitation may occur from complications of hypoglycemic or hyperglycemic reactions (drowsiness, semiconsciousness, diabetic coma or insulin shock). The administration of insulin is, within itself, a complicated process requiring insulin, syringe, needle, alcohol sponge and a sterile technique. Factors related to long-haul commercial motor vehicle operations, such as fatigue, lack of sleep, poor diet, emotional conditions, stress and concomitant illness compound the dangers. The FMCSA has consistently held that a diabetic who uses insulin for control does not meet the minimum physical requirements of the FMCSRs.

Hypoglycemic drugs, taken orally, are sometimes prescribed for diabetic individuals to help stimulate natural body production of insulin. If the condition can be controlled by the use of oral medication and diet, then an individual may be qualified under the present rule. CMV drivers who do not meet the Federal diabetes standard may call (202) 366-1790 for an application for a diabetes exemption. (See Conference Report on Diabetic Disorders and Commercial Drivers and Insulin Using Commercial Motor Vehicle Drivers at: http://www.fmcsa.dot.gov/rulesregs/medreports.htm)

**Cardiovascular Condition: §391.41(b)(4):** A person is physically qualified to drive a commercial motor vehicle if that person: Has no current clinical diagnosis of myocardial infarction, angina pectoris, coronary insufficiency, thrombosis or any other cardiovascular disease of a variety known to be accompanied by syncope, dyspnea, collapse or congestive cardiac failure.

The term "has no current clinical diagnosis of" is specifically designed to encompass: "a clinical diagnosis of" (1) a current cardiovascular condition, or (2) a cardiovascular condition which has not fully stabilized regardless of the time limit. The term "known to be accompanied by" is designed to include: a clinical diagnosis of a cardiovascular disease (1) which is accompanied by symptoms of syncope, dyspnea, collapse or congestive cardiac failure; and/or (2) which is likely to cause syncope, dyspnea, collapse or congestive cardiac failure.

It is the intent of the FMCSRs to render unqualified a driver who has a current cardiovascular disease which is accompanied by and/or likely to cause symptoms of syncope, dyspnea, collapse, or congestive cardiac failure. However, the subjective decision of whether the nature and severity of an individual's condition will likely cause symptoms of cardiovascular insufficiency is on an individual basis and qualification rests with the medical examiner and the motor carrier. In those cases where there is an occurrence of cardiovascular insufficiency (myocardial infarction, thrombosis, etc.), it is suggested before a driver is certified that he or she have a normal resting and stress electrocardiogram (ECG), no residual complications and no physical limitations, and is taking no medication likely to interfere with safe driving. Coronary artery bypass surgery and pacemaker implantation are remedial procedures and thus, not disqualifying. Implantable cardioverter defibrillators are disqualifying due to risk of syncope. Coumadin is a medical treatment which can improve the health and safety of the driver and should not, by its use, medically disqualify the commercial driver. The emphasis should be on the underlying medical condition(s) which require treatment and the general health of the driver. The FMCSA should be contacted at (202) 366-1790 for additional recommendations regarding the physical qualification of drivers on coumadin. (See Cardiovascular Advisory Panel Guidelines for the Medical examination of Commercial Motor Vehicle Drivers at: http://www.fmcsa.dot.gov/rulesregs/medreports.htm)

**Respiratory Dysfunction: §391.41(b)(5):** A person is physically qualified to drive a commercial motor vehicle if that person: Has no established medical history or clinical diagnosis of a respiratory dysfunction likely to interfere with his ability to control and drive a motor vehicle safely.

Since a driver must be alert at all times, any change in his or her mental state is in direct conflict with highway safety. Even the slightest impairment in respiratory function under emergency conditions (when greater oxygen supply is necessary for performance) may be detrimental to safe driving.

There are many conditions that interfere with oxygen exchange and may result in incapacitation, including emphysema, chronic asthma, carcinoma, tuberculosis, chronic bronchitis and sleep apnea. If the medical examiner detects a respiratory dysfunction, that in any way is likely to interfere with the driver's ability to safely control and drive a commercial motor vehicle, the driver must be referred to a specialist for further evaluation and therapy.

Anticoagulation therapy for deep vein thrombosis and/or pulmonary thromboembolism is not unqualifying once optimum dose is achieved, provided lower extremity venous examinations remain normal and the treating physician gives a favorable recommendation. (See Conference on Pulmonary/Respiratory Disorders and Commercial Drivers at: http://www.fmcsa.dot.gov/rulesregs/medreports.htm)

**Hypertension: §391.41(b)(6):** A person is physically qualified to drive a commercial motor vehicle if that person: *Has no current clinical diagnosis of high blood pressure likely to interfere with ability to operate a commercial motor vehicle safely.*

Hypertension alone is unlikely to cause sudden collapse; however, the likelihood increases when target organ damage, particularly cerebral vascular disease, is present. This regulatory criteria is based on FMCSA's *Cardiovascular Advisory Guidelines for the Examination of CMV Drivers*, which used the Sixth Report of the Joint National Committee on Detection, Evaluation, and Treatment of High Blood Pressure (1997).

Stage 1 hypertension corresponds to a systolic BP of 140-159 mmHg and/or a diastolic BP of 90-99 mmHg. The driver with a BP in this range is at low risk for hypertension-related acute incapacitation and may be medically certified to drive for a one-year period. Certification examinations should be done annually thereafter and should be at or less than 140/90. If less than 160/100, certification may be extended one time for 3 months.

A blood pressure of 160-179 systolic and/or 100-109 diastolic is considered Stage 2 hypertension, and the driver is not necessarily unqualified during evaluation and treatment of hypertension and may be medically certified to drive for a one-time only 3-month certification. Once the driver has reduced his or her blood pressure to less than or equal to 140/90, a blood pressure in range is an absolute indication for anti-hypertensive drug therapy. Provided treatment is well tolerated and the driver demonstrates a BP value of 140/90 or less, he or she may be certified for one year from date of the initial exam.

A blood pressure at or greater than 180 (systolic) and 110 (diastolic) is considered Stage 3, high risk for an acute BP-related event. The driver may not be qualified, even temporarily, until reduced to 140/90 or less and treatment is well tolerated. The driver may be certified for 6 months and biannually (every 6 months) thereafter if well controlled.

Annual recertification is recommended if the medical examiner does not know the severity of hypertension prior to treatment.

An elevated blood pressure finding should be confirmed by at least two subsequent measurements on different days.

Treatment includes nonpharmacologic and pharmacologic modalities as well as counseling to reduce other risk factors. Most anti-hypertensive medications also have side effects, the importance of which must be judged on an individual basis. Individuals must be alerted to the hazards of these medications while driving. Side effects of somnolence or syncope are particularly undesirable in commercial drivers.

Secondary hypertension is based on the above stages. Evaluation is warranted if patient is persistently hypertensive on maximal or near-maximal doses of 2-3 pharmacologic agents. Some causes of secondary hypertension may be amenable to surgical intervention or specific pharmacologic change.

(See Cardiovascular Advisory Panel Guidelines for the Medical Examination of Commercial Motor Vehicle Drivers at: http://www.fmcsa.dot.gov/rulesregs/medreports.htm)

**Rheumatic, Arthritic, Orthopedic, Muscular, Neuromuscular or Vascular Disease: §391.41(b)(7):** A person is physically qualified to drive a commercial motor vehicle if that person: *Has no established medical history or clinical diagnosis or rheumatic, arthritic, orthopedic, muscular, neuromuscular or vascular disease which interferes with the ability to control and operate a commercial motor vehicle safely.*

Certain diseases are known to have acute episodes of transient muscle weakness, poor muscular coordination (ataxia), abnormal sensations (paresthesia), decreased muscular tone (hypotonia), visual disturbances and pain which may be suddenly incapacitating. With each recurring episode, these symptoms may become more pronounced and remain for longer periods of time. Other diseases have more insidious onset and display symptoms of muscle wasting (atrophy), swelling and paralysis which may not suddenly incapacitate a person but may restrict his/her movements and eventually interfere with the ability to safely operate a motor vehicle. In many instances these diseases are degenerative in nature or may result in deterioration of the involved area.

Once the individual has been diagnosed as having a rheumatic, arthritic, orthopedic, muscular, neuromuscular or vascular disease, then he/she has an established history of that disease. The physician, when examining an individual, should consider the following: (1) the nature and severity of the individual's condition (such as sensory loss or loss of strength); (2) the degree of limitation present (such as range of motion); (3) the likelihood of progressive limitation (not always present initially but may manifest itself over time); and (4) the likelihood of sudden incapacitation. If severe functional impairment exists, the driver does not qualify. In cases where more frequent monitoring is required, a certificate for a shorter time period may be issued. (See Conference on Neurological Disorders and Commercial Drivers at: http://www.fmcsa.dot.gov/rulesregs/medreports.htm)

**Epilepsy: §391.41(b)(8):** A person is physically qualified to drive a commercial motor vehicle if that person: *Has no established medical history or clinical diagnosis of epilepsy or any other condition which is likely to cause loss of consciousness or any loss of ability to control a motor vehicle.*

Epilepsy is a chronic functional disease characterized by seizures or episodes that occur without warning, resulting in loss of voluntary control which may lead to loss of consciousness and/or seizures. Therefore, the following drivers cannot be qualified: (1) a driver who has a medical history of epilepsy; (2) a driver who has a current clinical diagnosis of epilepsy; or (3) a driver who is taking antiseizure medication.

If an individual has had a sudden episode of a nonepileptic seizure or loss of consciousness of unknown cause which did not require antiseizure medication, the decision as to whether that person's condition will likely cause loss of consciousness or loss of ability to control a motor vehicle is made on an individual basis by the medical examiner in consultation with the treating physician. Before certification is considered, it is suggested that a 6-month waiting period elapse from the date of the episode. Following the waiting period, it is suggested that the individual have a complete neurological examination. If the results of the examination are negative and antiseizure medication is not required, then the driver may be qualified.

In those individual cases where a driver has a seizure or an episode of loss of consciousness that resulted from a known medical condition (e.g., drug reaction, high temperature, acute infectious disease, dehydration or acute metabolic disturbance), certification should be deferred until the driver has fully recovered from that condition and has no existing residual complications, and not taking antiseizure medication.

Drivers with a history of epilepsy/seizures off antiseizure medication and seizure-free for 10 years may be qualified to drive a CMV in interstate commerce. Interstate drivers with a history of a single unprovoked seizure may be qualified to drive a CMV in interstate commerce if seizure-free and off antiseizure medication for a 5-year period or more. (See Conference on Neurological Disorders and Commercial Drivers at: http://www.fmcsa.dot.gov/rulesregs/medreports.htm)

**Mental Disorders: §391.41(b)(9):** A person is physically qualified to drive a commercial motor vehicle if that person: *Has no mental, nervous, organic or functional disease or psychiatric disorder likely to interfere with the ability to drive a motor vehicle safely.*

Emotional or adjustment problems contribute directly to an individual's level of memory, reasoning, attention and judgment. These problems often underlie physical disorders. A variety of functional disorders can cause drowsiness, dizziness, confusion, weakness or paralysis that may lead to incoordination, inattention, loss of functional control and susceptibility to accidents while driving. Physical fatigue, headache, impaired coordination, recurring physical ailments and chronic "nagging" pain may be present in a wide degree that certification for commercial driving is inadvisable. Seizure and psychosomatic complaints should be thoroughly examined when determining an individual's overall fitness to drive. Disorders of a periodically incapacitating nature, even in the early stages of development, may warrant disqualification.

Many bus and truck drivers have documented that "nervous trouble" related to neurotic, personality, emotional or adjustment problems is responsible for a significant fraction of their preventable accidents. The degree to which an individual is able to appreciate, evaluate and adequately respond to environmental strain and emotional stress is critical when assessing an individual's mental alertness and flexibility to cope with the stresses of commercial motor vehicle driving.

When examining the driver, it should be kept in mind that individuals who have under chronic emotional upsets may have deeply ingrained maladaptive or erratic behavior patterns. Excessively antagonistic, instinctive, impulsive, explosive, paranoid or severely depressed behavior greatly interferes with the driver's ability to drive safely. Those individuals who are highly susceptible to frequent states of emotional instability (schizophrenia, affective psychoses, paranoia, anxiety or depressive neurosis) may warrant disqualification. Careful consideration should be given to the side effects and interactions of medications in the overall qualification determination. See Psychiatric Conference Report for specific recommendations and the use of medications and potential hazards for driving. (See Conference on Psychiatric Disorders and Commercial Drivers at: http://www.fmcsa.dot.gov/rulesregs/medreports.htm)

**Vision: §391.41(b)(10):** A person is physically qualified to drive a commercial motor vehicle if that person: *Has distant visual acuity of at least 20/40 (Snellen) in each eye with or without corrective lenses or visual acuity separately corrected to 20/40 (Snellen) or better with corrective lenses, distant binocular acuity of at least 20/40 (Snellen) in both eyes with or without corrective lenses, field of vision of at least 70 degrees in the horizontal meridian in each eye, and the ability to recognize the colors of traffic signals and devices showing standard red, green, and amber.*

The term "ability to recognize the colors of" is interpreted to mean if a person can recognize and distinguish among traffic control signals and devices showing standard red, green and amber. Even though he or she may have some type of color perception deficiency, if certain color perception tests are administered, (such as Ishihara, Pseudoisochromatic, Yarn) and doubtful findings are discovered, a contact lens evaluation test may be employed to determine the driver's ability to recognize these colors.

Contact lenses are permissible if there is sufficient evidence to indicate that the driver has good tolerance and is well adapted to their use. Use of a contact lens in one eye for distance visual acuity and another lens in the other eye for near vision is not acceptable, nor telescopic lenses acceptable for the driving of commercial motor vehicles.

If an individual meets the criteria by the use of glasses or contact lenses, the following statement shall appear on his/her Medical Examiner's Certificate: *"Qualified only if wearing corrective lenses."*

CMV drivers who do not meet the Federal vision standard may call (703) 366-1790 for an application for a vision exemption. (See Visual Disorders and Commercial Drivers at: http://www.fmcsa.dot.gov/rulesregs/medreports.htm)

**Hearing: §391.41(b)(11):** A person is physically qualified to drive a commercial motor vehicle if that person: *First perceives a forced whispered voice in the better ear at not less than 5 feet with or without the use of a hearing aid, or, if tested by use of an audiometric device, does not have an average hearing loss in the better ear greater than 40 decibels at 500 Hz, 1,000 Hz, and 2,000 Hz with or without a hearing aid when the audiometric device is calibrated to American National Standard (formerly ADA Standard) Z24.5-1951.*

Since the prescribed standard under the FMCSRs is the American Standard Association (ANSI), it may be necessary to convert the audiometric results from the ISO standard to the ANSI standard. Instructions are included on the Medical Examination report form.

If an individual meets the criteria by using a hearing aid, the driver must wear that hearing aid and have it in operation at all times while driving. Also, the driver must be in possession of a spare power source for the hearing aid.

For the whispered voice test, the individual should be stationed at least 5 feet from the examiner with the ear being tested turned toward the examiner. The other ear is covered. Using the breath which remains after a normal expiration, the examiner whispers words or random numbers such as 66, 18, 23, etc. The examiner should not use only sibilants (s-sounding materials). The opposite ear should be tested in the same manner. If the individual fails the whispered voice test, the audiometric test should be administered.

If an individual meets the criteria by the use of a hearing aid, the following statement must appear on the Medical Examiner's Certificate: *"Qualified only when wearing a hearing aid."* (See Hearing Disorders and Commercial Motor Vehicle Drivers at: http://www.fmcsa.dot.gov/rulesregs/medreports.htm)

**Drug Use: §391.41(b)(12):** A person is physically qualified to drive a commercial motor vehicle if that person: *Does not use a controlled substance identified in 21 CFR 1308.11, Schedule 1, an amphetamine, a narcotic, or any other habit-forming drug. Exception: A driver may use such a substance or drug, if the substance or drug is prescribed by a licensed medical practitioner who is familiar with the driver's medical history and assigned duties; and has advised the driver that the prescribed substance or drug will not adversely affect the driver's ability to safely operate a commercial motor vehicle.*

This exception does not apply to methadone. The intent of the medical certification process is to medically evaluate a driver to ensure that the driver has no medical condition which interferes with the safe performance of driving such on a public road. If a driver uses a Schedule 1 drug or other substance, an amphetamine, a narcotic, or any other habit-forming drug, the driver is to be found medically unqualified. Motor carriers are encouraged to obtain a practitioner's written statement about the effects on transportation safety of the use of a particular drug.

A test for controlled substances is not required as part of this biennial certification process. The FMCSA or the driver's employer should be contacted directly for information on controlled substances and testing requirements under Part 382 of the FMCSRs.

The term "uses" is designed to encompass instances of prohibited drug use determined by a physician through established medical means. This may or may not involve body fluid testing. If body fluid testing takes place, positive test results should be confirmed by a second test of greater specificity. The term "habit-forming" is intended to include any drug or medication generally recognized as capable of becoming habitual, and which may impair the user's ability to operate a commercial motor vehicle safely.

The driver is medically unqualified for the duration of the prohibited drug(s) use and until a second examination shows the driver is free from the prohibited drug(s) use. Recertification may involve a substance abuse evaluation, the successful completion of a drug rehabilitation program, and a negative drug test result. Additionally, given that the certification period is normally two years, the examiner has the option to certify for a period of less than 2 years if they examiner determines more frequent monitoring is required. (See Conference on Neurological Disorders and Commercial Drivers and Conference on Psychiatric Disorders at: http://www.fmcsa.dot.gov/rulesregs/medreports.htm)

**Alcoholism: §391.41(b)(13):** A person is physically qualified to drive a commercial motor vehicle if that person: *Has no current clinical diagnosis of alcoholism.*

The term "current clinical diagnosis of" is specifically designed to encompass a current alcoholic illness or those instances where the individual's physical condition has not fully stabilized, regardless of the length of time. If an individual shows signs of having an alcoholism problem, he or she should be referred to a specialist. After counseling and/or treatment, he or she may be considered for certification...



# DRIVER CERTIFICATION FILE

DRIVER NAME _TobY    Charles    HiLYER_

ADDRESS _3583    WAReingwood    DR._ CITY _MontgomerY_ STATE _AL._ ZIP _36109_

SOCIAL SECURITY NO. ████████████████

DATE OF EMPLOYMENT _____

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

G.F. Kelley v. U.S. Xpress
D 002217
Defendant's Doc. Production



G.F. Kelley v. U.S. Xpress
D 002218
Defendant's Doc. Production



G.F. Kelley v. U.S. Xpress
D 00219
Defendant's Doc. Production

| HAZ-MAT EMPLOYEE TRAINING REQUIRED | | | |
|---|---|---|---|
| GENERAL AWARENESS | | SAFETY TRAINING | |
| FUNCTION SPECIFIC | | DRIVER TRAINING | |
| RECURRENT TRAINING DATE (Three years from most recent Training) | | | 8-23-04 |

| Name    (last      First      Middle) | Employer |
|---|---|
| HILYER  TOBY  Charles | USXpress Enterprises |
| Social Security # | Address |
| ⬛⬛⬛⬛⬛⬛⬛⬛⬛ | 4080 Jenkins Road |
| Job Position | City          State          Zip |
| OTR  Driver | Chattanooga    TN        37421 |

### REGULATIONS

172.704(d) Recordkeeping. A record of current training, inclusive of the preceding two years, in accordance with this subpart shall be created and retained by each hazmat employer for each hazmat employee for as long as that employee is employed by that employer as a hazmat employee and for 90 days thereafter. The record shall include (1) The hazmat employee's name; (2) The most recent training completion date of the hazmat employee's training; (3) A description copy, or the location of the training materials to be used to meet the requirements in paragraph (a) of this section; (4) The name and address of the person providing the training; and (5) Certification that the hazmat employee has been trained and tested as required by this subpart.

172.704(e) Limitation. A hazmat employee who repairs, modifies, reconditions, or test's packagings as qualified for use in the transportation of hazardous materials, and who does not perform any other function subject to the requirements of this subchapter, is not subject to the safety training requirements of paragraph (a)(3) of this section

### INSTRUCTIONS

The training requirements in 172.704 and 177.816 cover four areas of training for hazmat employees. Based on the training required for the above named hazmat employee, provide the training and testing for compliance. Satisfy the recordkeeping requirements in 172.704 (d) by completing the information on this form.

### Section 1                Current Training

| Completion date | Description of training, copy or location of training material used | Trainer/ Address | Training and testing certified by | Date |
|---|---|---|---|---|
| 8-23-04 | Haz-mat 126/181 | USXpress Enterprises | | 8-23-04 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

### Section 2                Relevant Training

Provide information from previous Hazmat employment training. Attach appropriate current records from the previous employer

G.F. Kelley v. U.S. Xpress
D 002220
Defendant's Doc. Production



G.F. Kelley v. U.S. Xpress
D 002221
Defendant's Doc. Production

G.F. Kelley v. U.S. Xpress
D 002222
Defendant's Doc. Production

# Medical Examination Report

## FOR COMMERCIAL DRIVER FITNESS DETERMINATION

649-F (6045)

| 1. DRIVER'S INFORMATION | Driver completes this section. |
|---|---|

**Driver's Name (Last, First, Middle)** HILYeR ToBY ChARleS

**Birthdate** ▉▉▉

**Age** 40

**Sex** ☒ M ☐ F

☐ New Certification
☒ Recertification
☐ Follow Up

**Date of Exam** 8-24-05

**Address** 3583 WaReingwood DR.

**City** montgomeRY AL. 36109

▉34 318-0189

Home Tel. (334) 356-3616

**Driver License No.** 4885715

**License Class** ☒ A ☐ C ☐ B ☐ D ☐ Other

**State of Issue** AL.

I certify that the above information is complete and true. I understand that inaccurate, false, or missing information may invalidate the examination and my Medical Examiner's Certificate.

Toby C. Hilyer
Driver's signature

8-24-05
Date

Medical Examiner's Comments on Health History (The medical examiner must review and discuss with the driver any "yes" answers and potential hazards of medications, including over-the-counter medications, while driving. This discussion must be documented below.)

* * Sections 5 through 7 on the reverse side must also be completed.

G.F. Kelley v. U.S. Xpress
D 002224
Defendant's Doc. Production

# U. S. XPRESS, INC.
4080 Jenkins Road · Chattanooga, TN 37421

## DRIVER APPLICATION

This application is current for thirty (30) days only. Thereafter, if you wish to be considered for employment, you must fill out a new application.
All information must be completed. If a question does not apply, write NONE or "0". PLEASE PRINT.

APPLICANTS, DO NOT WRITE ABOVE THIS LINE.

## PERSONAL

NAME _HILYer_ (LAST) _Toby_ (FIRST) _Charles_ (MIDDLE)  SOCIAL SECURITY # [redacted]

OTHER NAMES USED _Chuck_

DATE OF BIRTH [redacted]  MAIL ADDRESS _None_

ADDRESS _3583 WAReingwood Dr._ (STREET) _Montgomery_ (CITY)  PHONE # [redacted]

_ALABama_ (STATE)  _36109_ (ZIP)  CELL PHONE # [redacted]

NOTIFY IN CASE OF EMERGENCY _KAY HiLYer_  PHONE # [redacted]

ADDRESS _3583 WAReingwood DR._ (STREET) _Montgomery_ (CITY) _AL._ (STATE) _36109_ (ZIP)

REFERRED TO USX BY WHOM? _____

## RESIDENCE ADDRESS

LIST RESIDENCE ADDRESSES FOR THE PAST 3 YEARS.

| | FROM | TO | STREET | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| (1) | 9/04 | 8/05 | 3583 WAReingwood DR. | Montgomery | AL. | 36109 |
| (2) | 6/03 | 9/04 | 112 Dunn DR. | Montgomery | AL. | 36117 |
| (3) | 1/00 | 4/03 | 418 Little Rd. | Tallassee | AL. | 36078 |

## EDUCATION

TRUCK DRIVING SCHOOL

HAVE YOU ATTENDED TRUCK DRIVING SCHOOL? ☒ YES ☐ NO  GRADUATION DATE _5/85_

NAME _Reid State Tech._  LOCATION: _Evergreen, AL._

## MILITARY STATUS

HAVE YOU SERVED IN THE U.S. ARMED FORCES? ☐ YES ☒ NO

BRANCH _____  DATES: FROM _____ TO _____

ARE YOU CURRENTLY A MEMBER OF THE ACTIVE RESERVES OR NATIONAL GUARD? ☐ YES ☒ NO

LIST ANY SPECIAL SKILLS OR TRAINING THAT YOU RECEIVED _____

G.F. Kelley v. U.S. Xpress
D 002225
Defendant's Doc. Production

Name of Company _____    Your Job Classification _____

Address of Company _____    Reason for Leaving _____

City _____    State _____    Zip _____

Accidents    YES    OR    NO    HOW MANY (PLEASE CIRCLE)    1    2    3    4    / MORE

G.F. Kelley v. U.S. Xpress
D 002226
Defendant's Doc. Production

| PRESENTLY HOLD OR HAVE HELD IN THE PAST. | POV | CMV | |
|---|---|---|---|
| | PCV | CMV | |
| | PCV | CMV | |

G.F. Kelley v. U.S. Xpress
D 002227
Defendant's Doc. Production

## AGREEMENT (PLEASE READ THE FOLLOWING STATEMENTS CAREFULLY)

I understand that U.S. Xpress Enterprises, Inc. and its subsidiaries follow the practice of requiring driver applicants to successfully complete a DOT physical, drug test, alcohol test or other tests, as a term and condition of qualification and from time to time thereafter to submit to a DOT physical, drug test, alcohol test, or other tests, upon request, as a term and condition of continued qualification. I hereby knowingly and freely give my consent to submit to DOT physicals, drug tests, alcohol tests, or other tests, and further agree to submit to DOT physicals, drug test, alcohol test, or other tests from time to time when so requested. I understand that any job offer is contingent upon obtaining DOT certification as well as successful completion of the orientation.

In connection with my application for qualification with you, I understand that an investigative consumer report(s) are being requested that will include information as to my character, credit history, work habits, performance, experience, accident history, drug and alcohol test results, including results from any pre-employment drug and/or alcohol test, along with reasons for termination of past employment obtained from previous employers. Further, I understand that you will be requesting information concerning my driving record and/or information from various state agencies that maintain records concerning credit record, criminal history, traffic offenses and accidents, as well as information concerning my previous driving record requests made by others from such state agencies. I understand that I have a right to make a written request within a reasonable amount of time to receive additional detailed information about the nature and scope of this investigation. I hereby authorize U.S. Xpress Enterprises, Inc. and its subsidiaries to obtain the above-described information, and agree that such information, and my experience history with you if I am qualified, will be supplied to other companies.

I further consent to you furnishing to consumer reporting services information concerning my character, work habits, performance, driving record and experience, as well as any reasons for termination of my qualifications, including drug and alcohol test results, and further consent to these services furnishing such information in the future to other companies which subscribe to these services from which I am seeking employment.

This certifies that this application was completed by me and that all entries on it are true and complete to the best of my knowledge. I also agree that falsified information and significant omissions may result in my disqualification now or at any time. I understand that U.S. Xpress Enterprises, Inc. and its subsidiaries use an electronic filing and signature system which includes the imaging and storing of employment applications. Therefore, my original paper application will not be retained. I understand that an electronic signature will be binding upon me to the same extent as if handwritten.

I understand that my qualification can be terminated, with or without cause, at any time at the discretion of either the company or myself.

In accordance with Section(s) 382.405, 382.413 & 391.23 of the Federal Motor Carrier Safety Regulations, I authorize any and all persons and/or institutions to provide any relevant information, including my alcohol and controlled substances testing/training and accident history that may be required to complete my qualification and I agree to release them from any and all liability for supplying said information.

*John C. Hilyer* (signature)    8-23-05

G.F. Kelley v. U.S. Xpress
D 002228

# APPLICANTS AUTHORIZATION
## TO OBTAIN PAST DRUG AND ALCOHOL TEST RESULTS

I, *Toby C. Hilyer*, understand that as a condition of hire with U. S. Xpress, I must give U. S. Xpress written authorization to obtain the results of all D.O.T. required drug and/or alcohol tests (including any refusals to be tested) from all of the companies for which I worked as a driver, or for which I took a pre-employment drug and/or alcohol test, during the past (3) years. I have also been advised and understand that my signing of this authorization does not guarantee me a job or guarantee that I will be offered a position with U. S. Xpress.

Below I have listed all of the companies for which I have worked for as a driver, or to which I applied as a driver during the last (3) years. I hereby authorize U. S. Xpress to obtain from those companies, and I hereby authorize those companies to furnish to U. S. Xpress the following information concerning my drug and alcohol tests: (i) all positive drug tests results during the past three (3) years; (ii) all alcohol test results of 0.04 or greater during the past three (3) years; (iii) all alcohol tests results of 0.02 or greater but less than 0.04 during the past three (3) years; (iv) all instances in which I refused to submit to a D.O.T. required drug and/or alcohol test during the past three (3) years.

The following is a list of all the companies for which I worked as a driver, or for which I attended orientation as a driver, during the past three (3) years:

| Company name and phone number | Dates worked for/applied: |
|---|---|
| Kelly Inc. 1-800-821-0144 | 1-04 9/05 |
| Am X O/R | 4-02 12-03 |
|  |  |
|  |  |
|  |  |
|  |  |

## APPLICANTS CERTIFICATION:

I have carefully read and fully understand this authorization to release my past drug and alcohol test results. In signing below, I certify that all of the information, which I have furnished, on this form is true and complete, and that I have identified all of the companies for which I have either worked, or applied for work, as a driver during the past two years.

*Toby C. Hilyer*
Signature of applicant

████████████
SSN

8-23-05
DATE

G.F. Kelley v. U.S. Xpress
D 002229
Defendant's Doc. Production

RECORD OF ROAD TEST

(Check only those items on which the driver's performance is
unsatisfactory. Explain unsatisfactory items under remarks)

Name: Toby C. Hilke    Address: 383 Warringwood, DE,

Dr. No: 4835115    State: AL    Equipment Driven: Tractor FLCONV VOLVO Trailer 53

Tested From: Wadley    To: Wadley    Date: Aug 23 07

**1 - Pre-Trip Inspection and Emergency Equipment**

| | |
|---|---|
| Checks general condition approaching unit | |
| Looks for leakage of coolants, fuel and lubricants | |
| Checks under the hood - oil, water, general condition, | |
| engine compartment and steering | |
| Checks around the unit - tires, lights, trailer hookup | |
| brake and light lines, body, doors, horn, windshield | |
| wipers, rear end protection (bumper) | |
| brake action, tractor protection valve, and | |
| parking (hand) brake | |
| knows use of jacks, tools, emergency warning devices, | |
| tire chains, fire extinguisher, spare fuses, and | |
| four way flashers | |
| Checks Instruments | |
| Cleans windshield, windows, mirrors, lights, and | |
| reflectors | |

**2 - Placing vehicle in motion and use of controls**

Engine
| | |
|---|---|
| Starts engine without difficulty | |
| Allows proper warm-up | |
| Understands gauges on instrument panel | |
| Maintains proper engine speed while driving | |
| Basic Knowledge of motors - gas, diesel | |
| use of motor | |

Clutch and Transmission
| | |
|---|---|
| Starts loaded unit smoothly | |
| Uses clutch properly | |
| Uses gearshift properly | |
| Shifts gears smoothly | |
| Uses proper gear sequence | |

Brakes
| | |
|---|---|
| Understands operating principles of air brakes | |
| Knows proper use of tractor protection valve | |
| Understands low air warning | |
| Test brakes before starting trip | |

| | |
|---|---|
| Fails to check traffic conditions & signal | |
| when pulling out from parked position | |
| Parks in illegal or unsafe location | |

Parking (road)
| | |
|---|---|
| Parks off pavement | |
| Avoids parking on soft shoulder | |
| Uses emergency warning signals when | |
| required | |
| Secured unit properly | |

**D. Steering**
| | |
|---|---|
| Fights steering wheel | |
| Allows truck to wander | |

**E. Lights**
| | |
|---|---|
| Knows lighting regulations | |
| Uses proper headlight beam | |
| Dim lights when meeting or following other vehicles | |
| Adjust speed in range of headlights | |
| Proper use of auxiliary lights | |

**Part 3 - Coupling and Uncoupling**
| | |
|---|---|
| Lines up units | |
| Hooks brake and light lines properly | |
| Secures trailer against movement | |
| Backs under slowly | |
| Tests hookup with power | |
| Checks hookups visually | |
| Handles landing gear properly | |
| Proper hook-up of full trailer | |
| Secures power unit against movement | |

**Part 4 - Backing and Parking**

**A. Backing**
| | |
|---|---|
| Gets out and checks before backing | |
| Looks back as well as uses mirror | |
| Gets out and rechecks conditions on long back | |
| Avoids backing from blind spot | |
| Signals when backing | |
| Controls speed and direction properly while backing | |

**B. Parking (city)**
| | |
|---|---|
| Takes too many pull ups | |
| Hits nearby vehicles or stationary objects | |
| Hits curb | |
| Parks too far from curb | |

**D. Grade Crossings**
| | |
|---|---|
| Adjusts speed to conditions | |
| Makes safe stop, if required | |
| Selects proper gear | |

**F. Speed**
| | |
|---|---|
| Speed consistent with basic ability | |
| Adjusts speed properly to road, weather, traffic conditions, legal limits | |
| Slows down for rough roads | |
| Slows down in advance of curves. | |

G.F. Kallay v. U.S. Xpress
D 002230
Defendant's Doc. Production

t 5 - Slowing and Stopping

intersections etc
Maintains consistent speed

. gears properly ascending

G. Courtesy and Safety

rs down properly

Depends on others for safety

s and restarts without rolling back

Yields right-of-way for safety

. brakes at top of hills

Fails to go ahead when given right-of-
way by others

s brakes properly on grades

s mirrors to check traffic to rear

Tends to crowd other drivers or force
way through traffic

aals following traffic

ids sudden stops

Fails to allow faster traffic to pass

ps smoothly without excessive

Fails to keep right and in own lane

nning

Unnecessary use of horn

ps before crossing sidewalk when

Other discourtesy or improper conduct

nming out of driveway or alley

ps clear of pedestrian crosswalk

Part 7- Miscellaneous

A. General Driving Ability and Habits

rt 6 - Operating in traffic Passing and Turning

Consistently alert and attentive

Turning

Consistently aware of changing traffic
conditions

ts in proper lane well in advance

nals well in advance

Adjusts driving to meet changing
conditions

ecks traffic conditions and turns only when

way is clear

Performs routine functions without taking
eyes from road

es not swing wide or cut short while turning

Checks instruments regularly

Traffic Signs and Signals

Willing to take instructions & suggestions

es not approach signal prepared to stop if
necessary

Adequate self-confidence in driving

Nervous, apprehensive

olates traffic signal

Easily angered

ns yellow light

Complains too much

arts up too fast or too slow on green

Personal appearance, manner,cleanliness

ils to notice or heed traffic signs

Physical Stamina

ins "stop" signs

B. Handling of Freight

Intersections

Checks freight properly

djusts speed to permit stopping if necessary

Handles and loads freight properly

ecks for cross traffic regardless of traffic controls

Handles bills properly

ields right-of-way for safety

Breaks down load as required

Passing

C. Rules and Regulations

asses with insufficient clear space
ahead

Knowledge of company rules

asses in unsafe location;hill, curve,
intersection

Knowledge of regulations, federal, state
local

ails to signal change of lanes

Knowledge of special truck routes

ulls out and back - uncertain

D. Use of Special Equipment (specify)

ailgates waiting chance to pass

locks traffic with slow pass

Remarks:

:uts in too short returning to right lane

OK For 1st seal

General Performance: Satisfactory____X____ Needs Training _____ Unsatisfactory _____

hualified for:Truck __√___ Tractor-Semi trailer _A_ _N_____ Other _____

Signature of Examiner: _Wallace X Beull_____

G.F. Kelley v. U.S. Xpress
D 002231
Defendant's Doc. Production

## Certificate of Compliance
### Verification of Single License Traffic Violation Reporting

## Notice to Drivers

The Commercial Motor Vehicle Safety Act of 1986 provides for a new set of controls over the drivers of commercial vehicles. The new law applies to all drivers operating vehicles and combinations with a Gross Vehicle Weight rating over 26,000 pounds and to any vehicle regardless of weight transporting hazardous materials.

The following provisions of this legislation become effective July 1, 1987:

1. No driver may possess more than one license and no motor carrier may use a driver having more than one license. A limited exception is made for drivers who are subject to non-resident licensing requirements of any state. This exception does not apply after December 31, 1989.
2. A driver convicted of a traffic violation (other than parking) must notify the motor carrier AND the state which issued the license to that driver of such conviction within 30 days.
3. Any person applying for a job as a commercial vehicle driver must inform the prospective employer of all previous employment as the driver of a commercial vehicle for the past 10 years, in addition to any other required information about the applicant's employment history.
4. Any violation is punishable by a fine not to exceed $2500. In addition, the Federal Motor Carrier Safety Regulations now require that a driver who loses any privilege to operate a commercial vehicle or who is disqualified from operating a commercial vehicle must advise the motor carrier the next business day after receiving notification of such action.

---

## To Be Retained By Motor Carrier

### Certification by Driver

I hereby certify that I have read and understand the driver provisions of the Commercial Motor Vehicle Safety Act of 1986, which became effective on July 1, 1987.

Driver's Name _Toby  C.  Hilyer_     SS# ████████

Address _3583   WAReingwood      DR.   Montgomery, AL. 36109_

License: State _AL_   Class _A V_   License # _4885715_

I further certify that the above commercial vehicle license is the only one held or that I have surrendered the following licenses to the states indicated.

State _____ Class _____   License # _____

State _____ Class _____   License # _____

Driver's Signature: _Joby  C. Hilyer_

G.F. Kelley v. U.S. Xpress
D 002232
Defendant's Doc. Production

⊏U.S. XPRESS. INC. ⊏XPRESS GLOBAL SYSTEMS

## CERTIFICATION OF ROAD TEST

Driver's Name _Toby C. Hilyer_

Social Security No. _____

Commercial Driver's License No. _4885715_ _AL._

State _A.L._ Location of Test _Whatley_

Type of Power Unit _VLW_ Type of Trailer(s) _53_

This is to certify that the above driver was given a road test under my supervision

on _May 23_ 20 _05_

consisting of approximately _20_ miles of driving.

It is my considered opinion that this driver possesses sufficient driving skills to operate safely the type of commercial motor vehicle listed above.

_William L. Bew_ _____ SAFETY DEPT
Signature of Examiner

In compliance with D.O.T. regulation 395.2, you are hereby notified that you are relieved from any and all duty when making meal or routine stops while en route to a destination. The duration of your relief shall not be less than 30 minutes or more than 1 hour 30 minutes. The meal or routine stop may be logged as "off duty" time.

## CERTIFICATION OF

Instruction in the transportation of Hazardous Materials in accordance with use title 49, parts 397, 100-177 and the use of Emergency Response Guide Book.

Date _5/23/05_ Driver's Signature _Toby C. Hilyer_

_____ SAFETY DEPT
Instructor's Signature

G.F. Kelley v. U.S. Xpress
D 002233
Defendant's Doc. Production

# NOTICE TO ALL DRIVERS

The cornerstone of any motor carrier safety program is driver compliance with logging regulations. These regulations assure a rested driver who is less likely to have an accident. As most of you are aware, the United States Department of Transportation and the various state enforcement agencies have an intensified enforcement program in regards to log compliance among drivers of tractor-trailer equipment.

One of the recurring problems is the falsification of daily logs by the drivers. Not only is this illegal, but it places the Carrier, and you, the Driver in a position to be fined for each violation by the U.S. DOT. We need your help in controlling these log violations.

Do not exceed your hours of service. Remember you must have a 10 hour break after 11 hours of driving, you cannot drive after having worked more than 14 consecutive hours and you cannot exceed 70 hours in 8 days. If you are having problems completing your logs as required by the DOT and the Company, contact the Safety Department. We appreciate and thank you for your continued cooperation.

Safety Department

## 7-Day Backlog

Full Name of Driver (Print): **TOBY CHARLES HILYER**

Social Security Number: ▓▓▓▓▓▓▓

Motor Vehicle Operators License Number: **488 5715 AL**

Type of License: **A**    Issuing State: **AL**    Exp. Date: **7-26-07**

| Day | 1 | 2 | 3 | 4 | 5 | 6 | 7 | Total |
|---|---|---|---|---|---|---|---|---|
| Date | 8 17 05 | 8 18 05 | 8 19 05 | 8 20 05 | 8 21 05 | 8 22 05 | 8 23 05 | ▓▓ |
| Hours Worked | 0 | T.C.H. 0 | T.C.H. 0 | 0 | T.C.H. 7.75 | T.C.H. 5.75 | 0 | 13.50 |

I qualify for the 34-hour restart exception during this period, as I was off duty for over 34 consecutive hours from _____ am/pm ___/___ through _____ am/pm ___/___.

I hereby certify that the information given above is correct to the best of my knowledge and belief, and that I was last relieved from work at:

Time: **5 P.m.**  Day: **22**  Month: **6**  Year: **05**

Driver's Signature: **Toby C. Hilyer**

Date: **8-23-05**

G.F. Kelley v. U.S. Xpress
D 002234
Defendant's Doc. Production