Debra P. Hackett
Clerk, U.S. District Court
15 LEE ST STE 206
MONTGOMERY AL 36104-4055

July 07, 2008

**Appeal Number: 07-15496-JJ**
Case Style: G.F. Kelly Trucking, Inc. v. U.S. Xpress
District Court Number: 06-00351 CV-F-E

TO:   Debra P. Hackett

CC:   John E. Tomlinson

CC:   Wilson Daniel Miles, III

CC:   David Baker Hall

CC:   Elizabeth Redding Floyd

CC:   Hon. Wallace Capel Jr.

CC:   Administrative File

# United States Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

July 07, 2008

Debra P. Hackett
Clerk, U.S. District Court
15 LEE ST STE 206
MONTGOMERY AL 36104-4055

**Appeal Number: 07-15496-JJ**
Case Style: G.F. Kelly Trucking, Inc. v. U.S. Xpress
District Court Number: 06-00351 CV-F-E

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, <u>but not a copy of the court's decision,</u> is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James O. Delaney (404) 335-6113

Encl.

# United States Court of Appeals
For the Eleventh Circuit

No. 07-15496

District Court Docket No.
06-00351-CV-F-E

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Jun 6, 2008
THOMAS K. KAHN
CLERK

G.F. KELLY TRUCKING, INC.,
GUY KELLY,
individually,

        Plaintiffs-Appellants,

versus

U.S. XPRESS ENTERPRISES, INC.,

        Defendant-Appellee.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

-----

Appeal from the United States District Court
for the Middle District of Alabama

-----

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
JUL 0 7 2008
U.S. COURT OF APPEALS
ATLANTA, GA.

Entered:   June 6, 2008
For the Court:   Thomas K. Kahn, Clerk
By:   Jackson, Jarvis

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 6, 2008
THOMAS K. KAHN
CLERK

No. 07-15496
Non-Argument Calendar

D. C. Docket No. 06-00351-CV-F-E

G.F. KELLY TRUCKING, INC.,
GUY KELLY, individually,

                                          Plaintiffs-Appellants,

versus

U.S. XPRESS ENTERPRISES, INC.,

                                          Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of Alabama

**(June 6, 2008)**

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

      Plaintiffs-Appellants G.F. Kelly Trucking, Inc. ("Kelly Trucking") and Guy Kelly appeal the district court's order granting summary judgment to the

Defendant-Appellee U.S. Xpress Enterprises, Inc. ("USX") on their claims of breach of contract, fraud and suppression. After review, we affirm.

## I. BACKGROUND

Defendant USX, a transportation corporation in Tennessee negotiated the purchase of Kelly Trucking, a short-haul trucking company in Alabama. On August 8, 2005, Guy Kelly, president of Kelly Trucking, signed an Asset Purchase Agreement ("APA") in which, among other things, USX agreed to purchase Kelly Trucking's book of business and certain equipment, including tractors and trailers. In exchange, Kelly Trucking gave USX an exclusive opportunity to hire its employee drivers and contract with its owner/operator drivers. Kelly Trucking agreed to provide a list of its drivers, to give USX access to its drivers' records and to "provide all reasonable cooperation and assistance" in USX's attempts to hire Kelly Trucking's drivers. USX, in its sole discretion, decided whether to hire each Kelly Trucking driver.

As a condition to closing, the APA provided that USX: (1) would conduct a due diligence investigation confirming Kelly Trucking's business, assets and financial and legal condition and (2) was to be satisfied, in its sole discretion, that Kelly Trucking had at least 130 drivers that met USX qualifications for hiring, as follows:

2

> Section 3.6. <u>Closing Date Drivers</u>. Buyer shall be satisfied, in its sole discretion, that there will be at least one hundred thirty (130) Closing Date Drivers that will meet Buyer's qualifications for hiring.[1]

The APA also required the parties to "cooperate and use their reasonable best efforts to evaluate as promptly as practicable all of [Kelly Trucking's] employee drivers and owner-operators for purposes of the condition specified in Section 3.6 above." As additional closing conditions, USX needed to be satisfied, in its sole discretion, with the results of an inspection of the equipment to be transferred and required Kelly Trucking to provide lien payoff letters from lenders financing any of the transferred equipment and a factoring payoff letter.

During negotiations and the due diligence investigation, Dennis Farnsworth of USX twice guaranteed to Guy Kelly that USX would purchase Kelly Trucking and assured Kelly that the sale would close on August 29, 2005.

On August 12, 2005, Kelly Trucking sent USX a list of 167 Kelly Trucking drivers, from which the 130 Closing Date Drivers could be found to satisfy Section 3.6 of the APA. Kelly Trucking also gave USX access to its drivers' records, although some files were incomplete or missing.

As part of its due diligence, USX conducted a preliminary review of the drivers' records to determine whether at least 130 drivers would qualify as Closing

---

[1] The phrase "Closing Date Drivers" is defined under the APA as "employee drivers and owner-operators" as of the date of closing.

3

Date Drivers. USX determined that 27 drivers were not qualified, leaving 140 drivers who were potentially eligible for hire by USX. On August 17, 2005, a color-coded list of the drivers that indicated which drivers were disqualified was forwarded to Kelly Trucking.

On August 22, 2005, USX sent employees from its safety department to Kelly Trucking's home office in Wadley, Alabama to conduct, among other things, a driver qualification process. USX's driver qualification process included a road test, drug testing, completing employment applications and attending an orientation by USX's safety department to introduce Kelly Trucking drivers to USX's safety policies and procedures.

To complete the driver qualification process, Kelly Trucking's drivers needed to be physically present. Consequently, the driver qualification process was disruptive to Kelly Trucking's business. Kelly Trucking determined which of its drivers were routed through Wadley to participate in the driver qualification process. To minimize the disruption, Kelly Trucking did not route all of its drivers through Wadley at once. Instead, on August 22, Kelly Trucking routed approximately 40% of its drivers to Wadley. Although the driver qualification process was supposed to take only one day, it did not and some of Kelly Trucking's drivers were still in Wadley on August 25.

Between August 22 and August 24, USX processed 95 Kelly Trucking drivers and disqualified 29 of them. It is undisputed that 17 of the 29 drivers disqualified during the driver qualification process had already been disqualified during the drivers' record review. Thus, in addition to the 27 drivers disqualified during the record review, 12 other drivers were disqualified during the driver qualification process, for a total of 39 disqualified drivers. This left 128 drivers for USX to evaluate and try to hire.

Fewer drivers showed up for the driver qualification process than USX expected. There was some discussion between USX and Kelly Trucking about conducting the driver qualification process at other Kelly Trucking locations to see drivers who were unable to be routed through Wadley; however, USX discontinued the driver qualification process before that could happen.

During the week of August 22, 2005, Kelly Trucking lost 50 drivers. These drivers left Kelly Trucking because they learned during USX's driver qualification process that many of USX's safety policies and procedures were more onerous than those of Kelly Trucking. For example, Kelly Trucking routed drivers through their home city for weekends, but USX did not. USX also required all trucks to have a governor so that trucks could not exceed 67 miles per hour and required drivers to stop at scales and log all scale and fuel stops. It became apparent to

USX employees conducting the driver qualification process that many of Kelly Trucking's drivers were hostile to and unwilling to comply with USX's policies and procedures and that many might not work for USX even if they qualified.

During a telephone conference on August 25, these USX employees advised USX's senior management that they believed USX would be unable to qualify the required 130 Closing Date Drivers. In addition, USX learned through a third-party evaluation that the book value on Kelly Trucking's tractors and trailers equaled the debt outstanding on the equipment. Furthermore, during a physical inspection of some of the trailers conducted the week of August 22, USX learned that the trailers' book value exceeded their actual value. The inspection revealed that many of the trailers had substantial damage and were not up to USX's road specifications. Finally, as of August 25, Kelly Trucking had not provided either the lien payoff letters or the factoring payoff letter.

Although several conditions to closing had not been met, USX's determination that it would be unable to find 130 qualified drivers was determinative. On August 25, USX discontinued its due diligence efforts and stopped the driver qualification process, which was ongoing. USX sent a letter to Kelly stating that "pursuant to the terms of the Asset Purchase Agreement, we have determined that it is not in the parties' best interest to move forward with the

proposed business arrangement."

According to Kelly, Al Hingst, a USX representative, also informed Kelly in person on August 25 that USX was not going to purchase Kelly Trucking's assets. Hingst told Kelly that USX had "botched this whole deal through mismanagement." Hingst apologized to Kelly and said that if he, Hingst, had been brought into the due diligence investigation earlier (Hingst became involved when he arrived in Wadley on August 24), the deal would have closed. After Hingst informed Kelly that the deal was off, Willis Childers, the safety director at Kelly Trucking, called the drivers together and announced that the deal had fallen through. In response, the drivers cheered and wanted to hug Childers.

During and after the negotiations, Kelly Trucking lost several clients either because they did not want to contract with USX or because Kelly Trucking no longer had adequate fleet capacity after it had lost so many drivers. In addition, USX employees contacted several Kelly Trucking clients during the due diligence investigation and told them that USX was acquiring Kelly Trucking. When Kelly learned of the client contact, he asked USX not to contact his clients until after the deal had closed. Finally, about two months after the purchase fell through, USX offered to hire two Kelly Trucking drivers who had been rejected during the driver qualification process.

Kelly Trucking and Guy Kelly filed this action in Alabama state court alleging that USX: (1) had breached the APA by not completing the purchase, (2) had fraudulently represented that it would close on the purchase, and (3) had suppressed the fact that it was using the due diligence process to steal Kelly Trucking's customers and drivers and to drive Kelly Trucking out of business.

USX removed the action to federal court based on diversity jurisdiction and, after discovery, moved for summary judgment. The district court granted USX summary judgment on all claims. This appeal followed.

## II. DISCUSSION[2]

### A. Breach of Contract

To establish a claim of breach of contract under Tennessee law, the plaintiff must show: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages caused by the breach of the contract. ARC LifeMed, Inc. v. AMC-Tennessee, Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).[3] However, if the contract contains a condition precedent, no

---

[2] We review a district court's grant of summary judgment de novo, applying the same legal standards used by the district court. Sierra Club v. Leavitt, 488 F.3d 904, 911 (11th Cir. 2007). Summary judgment is proper when the evidence, viewed in the light most favorable to the non-moving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.

[3] As a federal court sitting in diversity, we apply the choice of law rules of the forum state, in this case, Alabama. See Grupo Televisa, S.A. v. Telemundo Comms. Group, Inc., 485 F.3d 1233, 1240 (11th Cir. 2007). Alabama law first looks to the contract to determine which

8

liability arises under the contract until the condition precedent is fulfilled. Strickland v. City of Lawrenceburg, 611 S.W.2d 832, 837 (Tenn. Ct. App. 1980).[4]

Tennessee law implies a duty of good faith and fair dealing in every contract. Wallace v. Nat'l Bank of Commerce, 938 S.W.2d 684, 686 (Tenn. 1996). Whether a party has acted in good faith in performing the terms of the contract is judged "against the intent of the parties as determined by a reasonable and fair construction of the language of the instrument." Id. However, where the contract provides one party with the unilateral exercise of discretion, the other party cannot reasonably expect that discretion not to be exercised and "[p]erformance of a contract according to its terms cannot be characterized as bad faith." Id. at 687 (concluding that bank's raising of fees did not breach the duty of bad faith because the contract gave the bank the unilateral discretion to do so).

Under the APA, USX's obligation to purchase Kelly Trucking's assets did not arise unless Section 3.6, the Closing Date Drivers provision, was fulfilled. Under Section 3.6, USX needed to be satisfied, in its sole discretion, that there

---

law applies. Stovall v. Universal Constr. Co., Inc., 893 So.2d 1090, 1102 (Ala. 2004). Here, the APA provides that Tennessee law governs its construction and enforcement. Thus, we apply Tennessee contract law.

[4] A "condition precedent" under Tennessee law is "a condition which must be performed before the agreement of the parties shall become a binding contract" or "a condition which must be fulfilled before the duty to perform an existing contract arises." Strickland, 611 S.W.2d at 686.

9

were at least 130 Closing Date Drivers that met USX's qualifications for hiring. Thus, USX's satisfaction with regard to the Closing Date Drivers was a condition precedent to its duty to perform under the APA and, if the condition precedent was not fulfilled, USX's failure to perform would not constitute a breach of the APA.

Plaintiffs argue that they presented evidence creating a genuine issue of material fact as to whether USX breached Section 7.12 of the APA, which required the parties to "cooperate and use reasonable best efforts" to evaluate Kelly Trucking's drivers as promptly as practicable for the purpose of the condition in Section 3.6 and also that USX breached the duty of good faith in determining that the Closing Date Drivers condition could not be met.

Plaintiffs point to evidence that, during the August 22 driver qualification process, USX evaluated 17 drivers it had already disqualified during the preliminary review of the drivers' files. Plaintiffs complain that USX's safety department employees sent to Wadley "[u]nexplainably . . . spent valuable time taking applications, conducting driving tests and drug tests" on these 17 already disqualified drivers. However, it is undisputed that it was Kelly Trucking, and not USX, that routed the drivers through Wadley to participate in the driver qualification process and that Kelly Trucking knew the identity of the already disqualified drivers at that time. Therefore, this evidence does not suggest that

10

USX failed to cooperate and use reasonable best efforts to evaluate the drivers promptly.

Plaintiffs also emphasize that USX had not completed the driver qualification process when it decided not to go through with the purchase. Plaintiffs note that USX's Hingst testified that at the time he expected between 60 and 100 additional drivers to show by the end of the week for evaluation.

However, the undisputed facts show that, as of August 25, Kelly Trucking did not have enough drivers from which USX could find 130 Closing Date Drivers. Of the original pool of 167 Kelly Trucking drivers, 39 had already been disqualified, leaving only 128 potentially eligible drivers. Even if all 128 drivers were deemed qualified to USX's satisfaction, Kelly Trucking still would have been 2 drivers short of the 130 needed to meet the Closing Date Drivers condition. Thus, it was not unreasonable for USX to halt the driver qualification process before it was completed.[5]

Furthermore, although Hingst estimated that between 60 and 100 drivers still needed to be evaluated as of August 25, he did not testify that there were enough drivers left in the pool to permit USX to find at least 130 qualified drivers.

---

[5]Based on these undisputed facts, there also is no jury issue as to whether the condition precedent (Section 3.6 Closing Date Driver condition) to USX's duty to perform under the APA was not met. See Strickland, 611 S.W.2d at 837.

11

Further, Hingst testified that even if 130 drivers passed the driver qualification process, he believed that many of them would be unwilling to work for USX and that he passed this information on to his superiors.

Finally, Plaintiffs point to Kelly's testimony that Hingst admitted to him on August 25 that USX had "botched the whole deal through mismanagement." Although Hingst denies making this statement, for summary judgment purposes we must construe all facts in favor of the plaintiffs. However, this one conclusory and vague statement is insufficient to support a jury finding that USX acted in bad faith or failed to use reasonable best efforts. See Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997) ("A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." (quotation marks omitted)).

Even if Hingst made the statement, it is not supported by any other evidence that USX did not use reasonable best efforts to promptly evaluate Kelly Trucking's drivers. Kelly Trucking provided files for its 167 drivers on August 9 and by August 17 USX had reviewed them all and provided Kelly Trucking with a color-coded chart indicating, among other things, which drivers were disqualified. By August 22, USX was at Kelly Trucking's Wadley location performing its driver qualification process. Within three days it became apparent that USX would be

12

unable to find the required 130 qualified drivers from the remaining pool of eligible drivers. At that point, USX immediately informed Kelly Trucking. Given these undisputed facts, Hingst's statement to Kelly does not create a genuine issue of material fact as to whether USX failed to use reasonable best efforts to evaluate Kelly Trucking's drivers as promptly as practicable or whether USX acted in bad faith in evaluating the drivers.

**B.     Promissory Fraud**

To prove a claim of promissory fraud under Alabama law, the plaintiff must show: "(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation . . . . (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive." Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1160 (Ala. 2003).[6]

Plaintiffs' promissory fraud claim arises out of Dennis Farnsworth's two alleged verbal guarantees to Guy Kelly that USX would purchase Kelly Trucking.

---

[6] Alabama choice of law rules apply the doctrine of lex loci delicti to tort claims, which means that the law of the state in which the injury occurred governs the substantive rights of the injured party. Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co., 358 F.3d 1306, 1308 (11th Cir. 2004). Here, because the alleged fraudulent misrepresentations occurred in Alabama, we apply Alabama law.

13

The first time was on July 22, 2005 at Kelly Trucking in Wadley, before the APA was signed. However, that statement on July 22 was made before the parties entered into the APA. Any pre-contract guarantees Farnsworth made that USX could close on the deal were vitiated by the APA, which imposed conditions precedent to closing. See <u>Tyler v. Equitable Life Assurance Soc'y</u>, 512 So.2d 55, 57 (Ala. 1987) ("[F]raud or misrepresentation cannot be predicated upon a verbal statement made before execution of a written contract when a provision in that contract contradicts the verbal statement.").

The second time was on August 20, 2005. Kelly had sent Farnsworth an email telling USX to either "piss or get off the pot" because USX had pushed back the original closing date target of July 15 and Kelly Trucking's customers and drivers were getting nervous. In response, Farnsworth called Kelly and apologized for the delays. Farnsworth said, "Guy, I guarantee you and promise you we are going to buy your company" and further promised, "we are going to close on August the 29th." Farnsworth told Kelly that a USX team would be coming to Wadley on August 22 to "start the process." Farnsworth also told Kelly not to worry about Section 3.6's Closing Date Drivers condition because "they would work out the deal with the drivers through safety."

Plaintiffs argue that it was reasonable for Kelly to believe, based on

14

Farnsworth's verbal assurances, that the Closing Date Drivers condition in Section 3.6 of the APA had been met or would be met at closing. However, under Alabama law, a contracting party cannot as a matter of law reasonably rely on verbal statements that are inconsistent with the written terms of a contract. Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997). Here, the written terms in Section 3.6 of the APA explicitly stated that USX had to be satisfied that there were 130 Closing Date Drivers that would meet its hiring qualifications before USX would close on the purchase of Kelly Trucking's assets. The APA also included a clause prohibiting any of its conditions from being waived verbally, as follows:

> Section 11.6. Amendments. This Agreement shall not be changed or terminated orally and no waiver of compliance with any provision or condition hereof and no consent provided for herein shall be effective unless evidenced by a written instrument duly executed by the party to be charged therewith.

Kelly signed the APA and is presumed to have known its contents. See Massey Automotive, Inc. v. Norris, 895 So.2d 215, 218-20 (Ala. 2004) (explaining that when a contracting party who is able to read signs a written contract, the contracting party is bound by the contract and cannot reasonably rely upon verbal statements that are inconsistent with the contract's terms).

Moreover, it is undisputed that USX had not completed its evaluation of

15

Kelly Trucking's drivers when Farnsworth made the second statement on August 20. At that time, Kelly knew that 27 drivers had been disqualified in the preliminary review of the drivers' files and that the driver qualification process would begin at the Wadley location two days later on August 22. And even Kelly stated that Farnsworth told him that a USX team was coming to Wadley to start the driver qualification process. Thus, it was unreasonable for Kelly to believe, based on Farnsworth's statements, that the condition had already been met or that the condition would necessarily be met or that the closing was guaranteed. Furthermore, because the APA expressly provided that conditions could only be waived in writing, Kelly could not have reasonably believed based on Farnsworth's statements that USX would buy Kelly Trucking's assets even if the condition was not met.[7]

For these reasons, the district court did not err in granting summary judgment to USX on plaintiffs' breach of contract and fraud claims.

**AFFIRMED.**

---

[7]On appeal, Plaintiffs do not appear to challenge the district court's summary judgment on their claim of fraudulent suppression. In any event, we note that that claim fails for the same reason that the promissory fraud claim fails. See Crowder v. Memory Hill Gardens, Inc., 516 So.2d 602, 605 (Ala. 1987) (stating that claims for both misrepresentation and suppression require a showing of reasonable reliance).

16